Lawrence H. Meuers (SBN 197663)
MEUERS LAW FIRM, P.L.
5395 Park Central Court
Naples, FL 34109
Telephone: (239) 513-9191
Facsimile: (239) 513-9677

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| KINGSBURG APPLE PACKERS, INC. D/B/A KINGSBURG ORCHARDS, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> BALLANTINE PRODUCE CO., INC., *et al.*, <br><br> Defendants. | CASE NO. 1:09-CV-00901-AWI-GSA <br><br> **CONSENT INJUNCTION AND ORDER ESTABLISHING PACA CLAIMS PROCEDURE AND VACATING JUNE 22, 2009 PRELIMINARY INJUNCTION HEARING** |

Before this Court is Plaintiffs, Kingsburg Apple Packers, Inc. d/b/a Kingsburg Orchards and David Del Curto S.A., Motion for Preliminary Injunction, seeking to enjoin Defendants' dissipation of PACA trust assets and to establish certain procedures for the management of the assets subject to the trust provisions of the Perishable Agricultural Commodities Act, 1930 (PACA).[1] No objections were filed by Defendants, Ballantine Produce Co., Inc. ("Ballantine"), Virgil E. Rasmussen, David S. Albertson, Eric Albertson, and Jerry DiBuduo to the relief requested by Kingsburg Orchards. The consent order is signed by all parties. Accordingly, the Court finds:

---

[1] 7 U.S.C. §§499a-t.

## I. PROCEDURAL HISTORY

A.  On May 21, 2009, Kingsburg Orchards and Del Curto commenced the above-entitled action against the corporate Defendant, Ballantine, and the Individual Defendants, Virgil E. Rasmussen, David S. Albertson, Eric Albertson, and Jerry DiBuduo, seeking to enforce payment from the statutory trust imposed by the Perishable Agricultural Commodities Act, 1930, as amended, 7 U.S.C. §499e(c)(2) (PACA).[2]  As part of this action, Kingsburg Orchards and Del Curto sought injunctive relief against Defendants to enjoin and restrain them from violating the provisions of PACA and from dissipating assets subject to the PACA Trust.[3]

B.  On or about May 22, 2009, this Court granted Kingsburg Orchards and Del Curto's Motion, and issued a Temporary Restraining Order[4], enjoining Ballantine, its agents, officers (including the Individual Defendants), subsidiaries, assigns, and others acting in concert or participation with them from dissipating, paying, transferring, assigning or selling PACA trust assets.[5]

C.  This Court scheduled a hearing on Kingsburg Orchards' Motion for entry of a Preliminary Injunction, and ordered Kingsburg Orchards to serve the Order, the Motion for Temporary Restraining Order and associated filings, along with the Motion for Preliminary Injunction on all Defendants.  Kingsburg Orchards has served Defendants in compliance with ¶6 of the Order.

D.  Defendants did not file a response to the Motion for Preliminary Injunction by the June 1, 2009 deadline.

E.  According to the pleadings, the Declarations, and the supporting documents (1) Ballantine purchased $1,004,026.07 in perishable agricultural commodities in foreign and

---

[2] DE 1.

[3] DE 9.

[4] DE 15.

[5] ¶1 of the Order Granting Plaintiffs' Application for Temporary Restraining Order.

CONSENT INJUNCTION & ORDER ESTABLISHING PACA CLAIMS PROCEDURE - 2 - v

interstate commerce from Kingsburg Orchards and Del Curto, (2) both Kingsburg Orchards and Del Curto provided Ballantine proper notice of intent to preserve trust benefits, and (3) Ballantine failed to pay Plaintiffs for the perishable agricultural commodities in violation of PACA, 7 U.S.C. §499e(c).

F. Plaintiffs allege Defendants have dissipated the PACA trust by failing to maintain sufficient "freely available" assets to satisfy the $1,004,026.07 PACA trust claim of Kingsburg Orchards and Del Curto.

G. Kingsburg Orchards and Del Curto have established that there is sufficient evidence of dissipation of assets subject to the PACA trust to warrant the relief granted in this order and the issuance of a Preliminary Injunction Order.

H. This Preliminary Injunction Order causes no damage to Defendants as it merely requires them to meet their obligations set forth in the PACA statute.

I. This Preliminary Injunction Order does not finally adjudicate the amounts owed to Plaintiffs or whether Plaintiffs gave proper notice of intent to preserve trust benefits.

J. The issuance of this injunction will not adversely affect the public interest.

K. This Order is necessary to facilitate the recovery of the PACA trust assets, prevent loss or diversion of such assets, minimize administrative costs, determine amount of valid claims to the assets, distribute the PACA trust assets pro-rata to qualified PACA trust beneficiaries, and to minimize further litigation.

## II. RECEIVERSHIP

M. Pursuant to that Amended and Restated Credit and Security Agreement dated as of April 30, 2008 ("Credit Agreement"), executed by Ballantine and Bank of the West ("Bank"), Bank agreed to make loans to Ballantine.

N. Bank's loans to Ballantine are secured by valid and perfected security interests in virtually all of the Ballantine's personal property, including without limitation, all crops and farm products of Ballantine.

O. On May 22, 2009, Bank commenced Civil Action No. 09 CECG 01818 DSB pending in the Superior Court of California County of Fresno-Central Division ("Civil Action") against Ballantine, Redwood Farms, Inc., BabiJuice Corporation of California, David Albertson, and Vonda M. Taussig, Trustee of the Sierra Investment Trust dated December 5, 2005.

P. On May 25, 2009, there was entered in the Civil Action that Order on Plaintiff's Ex Parte Application for Appointment of a Receiver and Temporary Restraining Order and Order to Show Cause ("Receivership Order").

Q. Pursuant to the Receivership Order, Steve Franson ("Receiver") was appointed to take possession of certain real property collateral and all of the personal property collateral of Ballantine which secures Bank's loans to Ballantine, including without limitation, all currently growing crops and farm products ("Crops").

R. Plaintiffs and Bank agree that funds have to be expended by the Receiver to cultivate, maintain, care for, preserve, and harvest the Crops and collect and account for the proceeds thereof.

S. Bank is willing to advance funds to the Receiver for the purpose of cultivating, maintaining, preserving, caring for and harvesting the Crops and collecting and accounting for the proceeds thereof, only if Bank's right to the repayment of those funds is senior to any rights of Plaintiffs or any other holder of a PACA trust claim against Ballantine (collectively, "PACA Claimants") with respect to the Crops and the proceeds thereof.

### III. PRELIMINARY INJUNCTION

1.  Kingsburg Orchards and Del Curto's Motion is granted. This Order supersedes and replaces the original TRO entered on May 22, 2009 and extended on June 8, 2009, and is binding upon the parties to this action, their officers, agents, employees, banks, or attorneys and all other persons or entities who receive actual notice of the entry of this Order.

2.  Ballantine, its agents, employees, officers (including Virgil E. Rasmussen, David S. Albertson, Eric Albertson, and Jerry DiBuduo), subsidiaries, assigns, financial and banking institutions, and others acting in concert or participation with them who receive actual notice of this Order are restrained and enjoined from dissipating, paying, transferring, assigning or selling assets covered by or subject to the trust provisions of the PACA as defined in ¶3.

3.  Under §499e(c)(2) of PACA, Ballantine's PACA trust assets include, without limitation, inventory of perishable agricultural commodities ("Produce"), inventory of food or products derived from Produce, accounts receivable or proceeds from the sale of such commodities or products, cash, and other produce related assets commingled with proceeds of such commodities or products ("PACA Trust Assets"). The Plaintiffs reserve the right to assert that the Ballantine's other assets, including without limitation, furniture, fixtures, equipment, vehicles, leases, real property, and leasehold improvements should be considered or deemed to be included within the definition of PACA Trust Assets and the Receiver, Bank or Defendants reserve the right to assert any asset is not a PACA Trust Asset.

4.  The PACA Trust Assets do not include the current or any future crop that is

cultivated, maintained, preserved, cared for and harvested by the Receiver, and the proceeds from the sale of the Crops except as further discussed below.

5. The PACA Trust Assets subject to Plaintiffs' claims and in the possession of Ballantine as described in this Order, and 7 C.F.R. §46.46 as interpreted by applicable case law, serve as Plaintiffs security for this injunction as required by Rule 65(c) of the Federal Rules of Civil Procedure.

6. Pursuant to the parties' consent order, the Preliminary Injunction Hearing set for June 22, 2009 is vacated as moot.

7. The parties are ordered to contact Magistrate Judge Gary Austin on or by July 1, 2009 for the purposes of setting a scheduling conference.

**IV. FUTURE CROP AND THE ESTABLISHMENT OF A PACA TRUST ACCOUNT**

8. The Bank has agreed to advance funds to the Receiver for the purpose of cultivating, maintaining, preserving, caring for and harvesting the Crops and collecting and account for the proceeds thereof.

9. An immediate need exists for the Receiver to obtain and use funds from the Bank in order to cultivate, maintain, preserve, care for and harvest the Crops, absent which the Receiver will not be able to maximize the value of the Crop for the benefit of the PACA trust beneficiaries of Ballantine Produce.

10. The Crops, once harvested, will be delivered to Fowler Packing, pursuant to that 2009 Grower Agreement dated May 11, 2009, between Ballantine and Fowler Packing Company ("Fowler"). Fowler will be instructed to deliver all proceeds from the Crops, after deducting Fowler's charges and expenses pursuant to the 2009 Grower Agreement, to the

Receiver.

11.     Notwithstanding anything in this Order to the contrary, the Receiver shall, from the proceeds of the Crops, first pay (a) all amounts advanced by the Bank to the Receiver, whether prior to or after the entry of this Order, for the purpose of cultivating, maintaining, preserving, caring for and harvesting the Crops and collecting and accounting for the proceeds thereof,  (b) all amounts spent by the Receiver in excess of the amounts advanced by the Bank the purpose of cultivating, maintaining, preserving, caring for and harvesting the Crops and collecting and accounting for the proceeds thereof, not to exceed $1,000,000, and (c) the expenses of the Receiver incurred in connection therewith (collectively, "Approved Expenses").   The determination of the Receiver as to an allocation of his expenses between other activities he undertakes and for the Approved Expenses shall be binding on all parties. Unless manifestly unreasonable.

12.     After all Approved Expenses have been paid, the Receiver will deposit any additional proceeds received from the sale of Crops in a separate segregated account for the benefit of the PACA Claimants (the "PACA Account") up to the initial amount of $1,200,000 (the "Funding Level").  The funds on deposit in the PACA Account are PACA Trust Assets. The Funding Level may be reduced by the amount of any payments to PACA Claimants and any portion of any claim that is disallowed by Order of this Court.

13.     In the event that the total PACA claims filed against Ballantine in this action are in excess of the initial Funding Level of the PACA Account, the Receiver will deposit any additional proceeds received from the sale of Crops in the PACA Account as are necessary to increase the Funding Level of the PACA Account to equal the total dollar amount of asserted

unpaid PACA trust claims, less the amount of any payments to PACA Claimants and any portion of any claim that is disallowed by Order of this Court..  The Receiver is entitled to use any proceeds from the sale of the Crops that may remain after payment of the Approved Expenses and deposit of the Funding Level in the PACA Account.

14. Funds in the PACA Account will be disbursed either:

   a. As set forth in this Order; or

   b. Upon the written agreement of Bank, PACA Claimants and Receiver.

15. Any and all interest that accrues on the funds in the PACA Account, from the date the account was opened to the date of distribution, will follow the funds into the hands of the party ultimately deemed entitled to such funds.

### V. LIQUIDATION OF THE ASSETS

16. The Receiver will oversee the prompt identification, recovery, and liquidation of the PACA Trust Assets which also are property of the receivership estate and deposit those assets into the PACA Account, pursuant to the terms of this Order

17. Ballantine will maintain the integrity and security of its financial records including accounts payable and receivable.

18. To facilitate the orderly transfer of Ballantine's assets into the PACA Account, Ballantine shall prepare a current accounts receivable aging report and deliver the accounts receivable aging report to the Receiver.

19. Ballantine must immediately transfer all monies constituting PACA Trust Assets in its possession, custody or control or which come into its possession, custody or control, including, without limitation, unnegotiated checks, bank account balances, cash,

proceeds from the sale of any property interests impressed with the PACA trust and proceeds of Ballantine's accounts receivable and inventory to the Receiver for deposit into the PACA Account.  Any bank or financial institution holding PACA Trust Assets of Ballantine is directed, upon receipt of this Order via facsimile or otherwise, to transfer the funds in that account to the PACA Account.

20. The Receiver must file a report of all account activity in the PACA Account ("Account Report") with the Court, and serve the same upon all counsel of record on a quarterly basis no later than the tenth (10th) business day following the end of each calendar quarter.  The Account Report must include copies of all deposits and withdrawals into and from the PACA Account by name of payor or payee, the amount of the transaction, and shall include copies of all bank statements received since the previous Account Report.

21. The Receiver is entitled to reasonable compensation and costs from the PACA Account for performing the duties set forth in this Order.  The Receiver agrees to serve all attorneys of record with its proposed monthly fees and costs via facsimile or e-mail.  If no written objections are made within five (5) business days of service, the Receiver is authorized to withdraw monies from the PACA Account to pay the bills.  If an objection to a payment is made and cannot be resolved by the parties, the objecting party must, within ten (10) days after the date of its objection, submit the dispute to this Court for resolution.

### VI. PACA CLAIMS PROCEDURE

22. All qualified PACA trust beneficiaries of Ballantine have the right to share *pro-rata* with Plaintiffs in any distribution of PACA Trust Assets recovered in accordance with this Order.

23.     The efficient administration of justice and finality of any ultimate distribution of PACA Trust Assets in this case requires all persons or entities claiming an interest in the PACA Trust Assets, other than Bank or the Receiver, to intervene in this action before the established bar date in order to (i) avoid duplicate actions, (ii) define the class of PACA trust beneficiaries, (iii) establish a method to determine the validity and amount of their claims, and (iv) share in any distribution of PACA Trust Assets recovered.

24.     All persons or entities having an unpaid invoice for the sale of produce to Ballantine, or who otherwise claim to be a PACA trust beneficiary of Ballantine, the Receiver and the Bank are granted leave to intervene in accordance with FRCP 24(a) and, upon their intervention, are bound by all Orders entered in this case.

25.     Joinder of all potential PACA trust claimants shall be accomplished by the Receiver notifying all potential PACA trust claimants, i.e. unpaid produce suppliers, of the Defendants, as identified in Ballantine's most recent accounts payable list, who have not appeared in this action, that they must serve a verified PACA Proof of Claim by the Deadline set forth below or lose their rights as PACA trust creditors.

| | |
|---|---|
| Deadline to Issue Notice of Deadlines | Monday, June 29, 2009 |
| Deadline to File PACA Proof of Claim | Wednesday, July 29, 2009 |
| Deadline to File Complaint in Intervention | Wednesday, July 29, 2009 |
| Deadline to File Objections to Claims | Wednesday, August 12, 2009 |
| Deadline to File Responses to Claims Objections | Wednesday, August 26, 2009 |
| Deadline to File PACA Trust Chart | Wednesday, September 9, 2009 |
| Deadline to File Objections to PACA Trust Chart | Wednesday, September 23, 2009 |
| Deadline for First Interim Distribution | Wednesday, October 7, 2009 |
| Deadline to File Motion to Determine Validity of PACA Claim | Wednesday, October 28, 2009 |

26.     The Receiver shall notify all potential PACA trust claimants of the PACA trust claim procedure set forth in this Order by sending a notice substantially similar to the form

attached as Exhibit "A" to Document No. 23, on or before "Deadline Issue Notice of Deadlines" set forth above. If the entity is a party to this action, or if a notice of appearance has been filed on its behalf, the Notice can be sent to that claimant's attorney of record. The Notice and this Order shall be sent via certified mail with return receipt requested, a nationally recognized courier service, or any equally verifiable means to prove delivery upon the recipient. The reasonable costs incurred in disseminating this Notice shall be deducted from the PACA Trust Fund.

27. Any creditor claiming PACA trust rights against the Defendants and wishing to share in any distribution in this action must:

    a. On or before the Deadline to File PACA Proof of Claim, file a verified PACA Proof of Claim substantially similar to the form attached as Exhibit B to Document No. 23, together with all supporting documents, with the Court and serve the PACA Proof of Claim, along with all supporting documentation, on the following counsel:

**Meuers Law Firm, P.L.**
Lawrence H. Meuers
5395 Park Central Court
Naples, FL 34109-5932
Telephone: (239) 513-9191
Facsimile: (239) 513-9677
lmeuers@meuerslawfirm.com

Attorneys for Plaintiffs

**Cox, Castle & Nicholson LLP**
Randy P. Orlik
2049 Century Park East, Suite 2800
Los Angeles, CA 90067
Telephone: (310) 284-2229
rorlik@coxcastle.com

Attorneys for Bank of the West

**Wild, Carter & Tipton**
Steven E. Paganetti
246 West Shaw Avenue
Fresno, CA 93704
Telephone: (559) 224-2131
Facsimile: (559) 229-7295
spaganetti@wctlaw.com

Attorneys for Defendants

**Perkins, Mann & Everett**
Reid H. Everett
2222 W. Shaw Ave., Suite 202
Fresno, CA  93711
Tel: (559) 447-5700
Fax: (559) 447-5600
reverett@pmelaw.com

Attorneys for Receiver

   b. On or before the Deadline to File Complaint in Intervention of Wednesday, July 29, 2009, file with the Court a Complaint in Intervention that complies with Rules 8 and 24 of the Federal Rules of Civil Procedure and serve the Complaint in Intervention, along with all supporting documentation, on all counsel of record in this case and specifically those counsel identified in subsection "a" of this paragraph.

   c. Defendants are granted until August 12, 2009 to file an omnibus response to the Complaints in Intervention and Amended Complaints. Defendants retain their right to object to any claims made herein.

**ANY CLAIMS NOT TIMELY FILED SHALL BE FOREVER BARRED** and any documents relied upon by any PACA claimant to support its claim which are not served in accordance with this paragraph, shall be inadmissible at any evidentiary hearing or trial conducted in this proceeding. This requirement does not apply to documents relied upon by a PACA claimant to rebut an objection to its claim.

  28. Having intervened and filed a Proof of Claim in this case, each person or entity is bound by all Orders entered in this case.

  29. Any objection to any PACA trust claim, which may be made by any party in interest, the Receiver or Bank shall be filed and served upon the PACA claimant and all counsel listed in ¶25(a) on or before the Deadline for Objections to Claims of Wednesday, August 12, 2009. The objection must set forth in detail the legal and factual basis for the objection to each invoice subject to the objection and attach any documents on which the objection is based ("Valid Objection"). Both Receiver and Bank are authorized to file

objections.

30. On or before the "Deadline for Responses to Claims Objections" of Wednesday, August 26, 2009, the PACA claimant whose claim is subject to an objection may file and serve on all counsel listed in ¶25(a) and the attorney for the objecting party, a detailed response to the objection.

31. Any PACA Claim, or portion thereof, to which no Valid Objection has been filed and served by the objection date, shall be deemed a valid PACA trust claim for the undisputed portion listed in the Proof of Claim.

32. Claims for which a Valid Objection has been filed and served and no timely response was filed and served shall be disallowed to the extent of the Valid Objection.

33. On or before the "Deadline to File PACA Trust Chart" of Wednesday, September 9, 2009, counsel for Plaintiffs shall prepare a chart listing:

    (i) each person or entity having filed a Declaration;

    (ii) the amount of its claim as set forth on the Declaration;

    (iii) the amount of each claim that is deemed a Valid PACA Claim;

    (iv) the amount of each claim that is deemed invalid due to no response to a Valid Objection being filed or a determination by this Court;

    (v) the amount, if any, of each claim subject to a pending Valid Objection;

    (vi) the funds available for an interim distribution equal to ninety percent (90%) of the funds ("Available Funds") in the PACA

           Account less any expenses, such as the Receiver's fees and expenses, and professional fees and expenses, paid from such PACA Trust Account described in the Order; and

    (vii)    the pro-rata distribution of the Available Funds to the Valid PACA Claims on a pro-rata basis allowing for a reserve in the event all pending Valid Objections are overruled.

           (the "PACA Trust Chart")

34. On or before the "Deadline to File Objections to PACA Trust Chart" of Wednesday, September 23, 2009, Receiver, Bank or any party in interest may file with the Clerk of this Court objections to the PACA Trust Chart. Any and all objections to the proposed pro-rata distribution as listed on the PACA Trust Chart must specify the legal and/or factual basis for the objection. The mere objection to the characterization of a claim as disputed or undisputed will not serve as valid objection to the PACA Trust Chart or prevent distribution according to its terms. If the objecting party and counsel for Plaintiffs are unable to resolve any timely filed objections to the PACA Trust Chart within ten days after the objection is filed, counsel for Plaintiffs will set the objection for hearing on the first available court date with notice to the objecting party and all parties.

35. On or before the "Deadline for First Interim Distribution" of Wednesday, October 7, 2009, absent timely Valid Objection to the PACA Trust Chart or portion thereof, the Receiver shall distribute the Available Funds *pro-rata* to the holders of undisputed claims listed on the PACA Trust Chart. The Receiver will make the distribution payable to the name and at the address set forth on the PACA claimant's Declaration, or to the client trust account of the PACA claimant's attorney of record. Each attorney has the duty to then distribute the funds to his client(s) in accordance with the PACA Trust Chart subject to any contrary fee agreement among the attorney and his clients. The Receiver shall be exonerated with respect to any distributions so made. If the claim that is paid is undisputed

when paid, then no party, intervenor, claimant, or other person shall have the right later to claim that the Receiver's payments were improper.

36. The *pro-rata* portion of <u>disputed</u> PACA claims, if any, will be held in the PACA Trust Account, until the time the objections to PACA claims are resolved, in which case the reserve portion will be either used to make the *pro-rata* distribution to the PACA claimant if the PACA claimant prevails, or made available for distribution to other valid PACA trust claims, if the objecting party prevails.

37. The same procedures will be used to make subsequent distributions. Meuers Law Firm, P.L. must prepare and file with the Clerk of this Court and serve upon all parties, Bank and Receiver a PACA Trust Chart. All parties have ten (10) days from service of the PACA Trust Chart to file and serve timely, valid objections to the PACA Trust Chart. Absent timely, valid objections, the Receiver shall make the distribution set forth in the PACA Trust Chart.

38. For those portions of a PACA Claim that are subject to a Valid Objection, the PACA claimant and the objecting party must exercise their best efforts to resolve any objection. In the event an objection is resolved, the parties must file a Notice of Compromise, stating the resolved claim amount, with the Court and serve all parties. Upon filing the Notice of Compromise, the resolved claim is a Valid PACA Claim and binding on all parties.

39. In the event the parties are unable to resolve the dispute, or the dispute is not withdrawn, on or before "Deadline to File Motion to Determine Validity of Claim" the PACA Wednesday, October 28, 2009, the PACA claimant must file with the Clerk of the Court and counsel for the objecting party, a separate motion to determine the validity, priority or amount of its alleged PACA Claim.

40. Once all Valid PACA Claims have been paid in full, any remaining funds in the PACA Trust Account will be released to the Receiver for application according to the Civil Action.

## VII. PROCEDURAL ISSUES

41. This Court exercises exclusive in rem jurisdiction over this action and the PACA

1  trust assets pursuant to this Order.  The Court also retains jurisdiction to enter further
2  Orders to enforce the terms of this PACA Claims Procedure Order.

3       42.   Because the initial disclosures and discovery are in part being provided for in
4  this Order, the parties are relieved of complying with FRCP 26 until the "First Interim
5  Distribution Deadline" Wednesday, October 7, 2009.  At that time the Court will set a
6  scheduling conference.

7       43.   The parties hereto agree that service is permitted to be made pursuant to
8  Fed.R.Civ.P. 5(b)(2)(D) via e-mail, *provided that* if service is effectuated via e-mail, a copy of the
9  document shall also be served via U.S. Mail or personal service on the date of e-mail service,
10 and service via e-mail shall be made to the following e-mail addresses identified above.  All
11 filings will be accompanied by a certificate of service.

12      44.   Any and all pending actions by or on behalf of other persons or entities against
13 Receiver, Bank, Ballantine, its officers or employees, that arise under or relate to unpaid
14 deliveries of Produce covered by the PACA trust are stayed and all subsequent actions
15 under the PACA trust by any unpaid seller of Produce to Ballantine are barred.  This
16 prohibition shall apply to all actions or proceedings in all courts or other forums, excluding
17 any actions before the United States Department of Agriculture, pending further order of
18 this Court.  Except as set forth in this Order, all persons or entities having unsatisfied claims
19 against Receiver, Bank, Ballantine, its officers or employees, arising under or relating to the
20 PACA trust for unpaid deliveries of Produce covered by the PACA trust have the right to
21 seek a recovery on such claims in this action only by following the procedure established in
22 this Order.

23

24 STIPULATED AND AGREED BY THE PARTIES:

25 **MEUERS LAW FIRM, P.L.**         **WILD, CARTER & TIPTON**

26

27 /s/Lawrence H. Meuers         /s/Steven E. Paganetti
   Lawrence H. Meuers (SBN 197663)     Steven E. Paganetti (SBN  87513)
   5395 Park Central CourtNaples, FL 34109-  246 West Shaw Avenue
28 5932Telephone:  (239)513-9191Facsimile:   Fresno, CA 93704

CONSENT INJUNCTION & ORDER ESTABLISHING PACA
CLAIMS PROCEDURE                                 - 16 -                                                                                                  v

| | |
|---|---|
| (239)513-9677lmeuers@meuerslawfirm.com | Telephone: (559) 224-2131 |
| | Facsimile: (559) 229-7295 |
| *Attorneys for Plaintiffs* | spaganetti@wctlaw.com |
| | *Attorneys for Defendants* |

**ORDER**

IT IS SO ORDERED.

**Dated:   June 17, 2009**                              **/s/ Anthony W. Ishii**
                                         CHIEF UNITED STATES DISTRICT JUDGE