**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KINGSBURG APPLE PACKERS INC.<br>D/B/A KINGSBURG ORCHARDS, et. al.<br><br>                    Plaintiffs,<br><br>            v.<br><br>BALLANTINE PRODUCE Co., Inc., et. al.,<br><br>                    Defendants. | NO. 1:09-CV-901-AWI-JLT<br><br>ORDER ON WAGON WHEEL'S<br>MOTION TO DETERMINE THE<br>VALIDITY OF PACA CLAIMS<br><br>(Doc. No. 117) |

On October 28, 2009, this court issued an order that directed Wagon Wheel Farms, Inc. ("Wagon Wheel") to file a motion with the court to determine the validity of its Perishable and Agricultural and Commodities Act ("PACA") claims. See Doc. No. 116. Wagon Wheel complied and filed its motion the same day. Kingsburg Group and Bank of the West oppose the motion and assert that Wagon Wheel's claims are invalid because Wagon Wheel's Notice of Intent to Preserve Trust Benefits ("Notice of Intent") was prematurely served before any trust rights had been created and because the Notice of Intent did not contain certain information that is required by applicable federal regulations. For the reasons described below, the court finds that Wagon Wheel failed to preserve its PACA trust claims.

**FACTUAL BACKGROUND**

Wagon Wheel alleges that it sold and/or delivered to Ballantine Produce Co. ("Ballantine"), a packer and commission merchant, perishable agricultural commodities. See Wagon Wheel Proof of Claim dated July 24, 2009. Wagon Wheel alleges that it was not licensed by the United States Department of Agriculture ("USDA") as a PACA licensee during the period applicable to the transactions. Wagon Wheel alleges that Ballantine acted as a grower's agent for Wagon Wheel. Wagon Wheel alleges that it delivered harvested tree fruit to Ballantine, who would then sell the fruit on behalf of Wagon Wheel (as its commission merchant). Wagon Wheel shipped produce to Ballantine between October 16 and December 3, 2008. See Kingsburg Opposition at page 5. Wagon Wheel alleges that Ballantine received and accepted the produce. Wagon Wheel appears to have received an accounting from Ballantine for those shipments on or about April 13, 2009. See Kingsburg Opposition at page 5. The accounting reflected commodities sold and the amount outstanding. See Kingsburg Opposition at page 5. Wagon Wheel contends that a May 1, 2008 letter ("May 1, 2008 Letter") from Craig Sorensen, President for Wagon Wheel, addressed to Ballantine and David Albertson, served as a Notice of Intent, preserving its PACA trust interest pursuant to 7 U.S.C. §499e(c)(3). The May 1, 2008 Letter, provides, in pertinent part:

> You have asked my family to deliver our 2008 Tree Fruit crop to Ballantine Produce Co... My family (Wagon Wheel Farms) now gives you, David Albertson and Ballantine Produce, this written notice to preserve Wagon Wheel Farms' P.A.C.A. trust benefits for the 2008 harvest. Please inform your staff and banking institutions about Wagon Wheel Farms' high priority P.A.C.A. lien to proceeds from the sale of Wagon Wheel Farms' fruit. This lien will exist indefinitely until Wagon Wheel Farms is paid in full.

See Exhibit A to Wagon Wheel Motion to Determine Validity of PACA Claims. Wagon Wheel alleges that the total amount past due and unpaid from Ballantine totals $1,018,306.22, all of which qualifies for PACA trust protection.

2

**DISCUSSION**

I.    PACA

Congress enacted PACA in 1930 with the intent of "preventing unfair business practices and promoting financial responsibility in the fresh fruit and produce industry." Sunkist Growers, Inc. v. Fisher, 104 F.3d 280, 282 (9th Cir. 1997). Under PACA, a statutory trust is created in favor of all unpaid suppliers or sellers of perishable agricultural commodities upon receipt of such goods by a "commission merchant, dealer, or broker."[1] The PACA trust "was established by Congress to protect sellers and suppliers of perishable agricultural commodities until full payment of sums due have been received." In re Southland + Keystone, 132 B.R. 632, 639 (9th Cir. BAP 1991), (quoting In re Milton Poulos, Inc., 94 B.R. 648, 650 (Bankr. C.D. Cal. 1988)). The statute provides, in relevant part:

> Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.

7 U.S.C. §499e(c)(2). The PACA trust is a "nonsegregated floating trust" that applies to the perishable "commodities, products derived therefrom, and any receivables or proceeds from their sale in the hands of the commission merchant, dealer, o[r] broker." H.R. REP. NO. 98-98-543, at 2 (1983), reprinted in 1984 U.S.C.C.A.N. 405, 406.

Any supplier or seller of agricultural commodities who gives proper notice of its interest in the PACA trust has a claim against the trust. In re Southland,132 B.R. at 639. PACA requires the beneficiary to preserve its trust right by providing written notice of its intent to preserve the trust within thirty days after the time payment is due. The PACA trust preservation provision

---

[1] The term "received" means at "the time when the buyer, receiver, or agent gains ownership, control, or possession of the perishable agricultural commodities." See 7 C.F.R. §46.36(a)(1).

provides:

> The unpaid supplier, seller, or agent shall lose the benefits of such trust unless such person has given written notice of intent to preserve the benefits of the trust to the commission merchant, dealer or broker within thirty calendar days (i) after expiration of the time prescribed by which payment must be made, as set forth in regulations issued by the Secretary, (ii) after expiration of such other time by which payment must be made, as the parties have expressly agreed to in writing before entering into the transaction, or (iii) after the time the supplier, seller, or agent has received such notice that the payment instrument promptly presented for payment has been dishonored. The written notice to the commission merchant, dealer, or broker shall set forth information in sufficient detail to identify the transaction subject to the trust. When the parties expressly agree to a payment time period different from that established by the Secretary, a copy of any such agreement shall be filed in the records of each party to the transaction and the terms of payment shall be disclosed on invoices, accountings, and other documents relating to the transaction.

7 U.S.C. §499e(c)(3). If a beneficiary does not comply with the notice requirements, it loses the benefits of the PACA trust. See In re Marvin Properties, Inc., 854 F.2d 1183, 1186 (9th Cir. 1988) ("The language of section 499e(c)(3) is unambiguous on its face. It clearly states that the seller shall lose the trust benefits unless 'such person has given written notice of intent to preserve benefits of the trust to the commission merchant, dealer, or broker and has filed such notice with the Secretary....'"); see also In re Fresh Approach, Inc., 51 B.R. 412, 423 (Bankr. N.D. Tex. 1985) ("Use of the words 'shall lose' and 'preserve' plainly refer to rights or interests existing prior to perfection. The clear meaning of the preservation provisions is that a beneficiary's pre-existing beneficial interest would evaporate absent affirmative steps by such a beneficiary to protect such interests. In short, the beneficial interest arises, by operation of law, upon delivery to a dealer of qualifying produce, and said interest exists unless and until either the claim is satisfied or the beneficiary fails to take the necessary steps to perfect.").

Thus, under the statutory language, a PACA trust is created, in favor of unpaid suppliers, sellers, or their agents at the time the perishable commodities are received by a commission merchant, dealer, or broker but, in order to preserve the PACA trust, the beneficiaries are further required to provide written notice to the commission merchant, dealer, or broker in receipt of those commodities within a specified time period. See 7 U.S.C. §§499e(c)(2), (c)(3). If the

beneficiary, however, is a licensee, then it may perfect its PACA trust rights by including certain statutory language on its invoices. See 7 U.S.C. §§499e(c)(4). Under the plain language of the statute, it does not appear that a beneficiary that is not also a licensee can rely on invoices to preserve its trust rights. See In re Enoch Packing Company, Inc. v. Joe Flores, 2007 WL 1589537, *4 (E.D. Cal. June 1, 2007).

   II.  Wagon Wheel's Arguments

Wagon Wheel contends that it perfected its PACA trust rights when it sent the May 1, 2008 letter to Ballantine. Wagon Wheel argues that the letter complied with PACA's statutory timing requirements under 7 U.S.C. §499e(c)(3) and regulations under 7 C.F.R. §46.46(f)(1)[2]. Wagon Wheel asserts that the requirements of 7 U.S.C. §499e(c)(3) that the trust notice be issued within thirty days after expiration of when payment from buyer is due merely establishes the last day when such notice may be given, and that there is no requirement that a seller must wait until payment default by the buyer before issuing its Notice of Intent. See Wagon Wheel Reply at page 2.

Wagon Wheel also argues that Kingsburg Group's interpretation of the PACA statute and regulations means that a grower's trust rights would depend on arbitrary elements of timing. Wagon Wheel contends that this interpretation would create a situation "where a grower using the 'invoice' method of preserving his PACA trust rights (under 499e(c)(4) could have its rights vitiated simply because the invoice he provided (with the requisite PACA trust language) arrived

---

[2] 7 C.F.R. §46.46(f)(1) provides that a Notice of Intent must include information, which establishes for each shipment:

(i) the names and addresses of the trust beneficiary, seller-supplier, commission merchant, or agent and the debtor, as applicable,

(ii) the date of the transaction, commodity, invoice price, and terms of payment (if appropriate),

(iii) the date of receipt of notice that a payment instrument has been dishonored (if appropriate), and

(iv) the amount past due and unpaid.

5

at the commission merchant hours, or even moments, before the commission merchant actually took possession or control of the fruit itself." See Wagon Wheel Reply at page 3.

Lastly, Wagon Wheel argues that nothing in the PACA statute requires that the Notice of Intent contain all the information set forth in the regulations and that the purpose of the notice requirement was served because Ballantine was on notice that all of its transactions with Wagon Wheel would be subject to PACA trust protection.

III. Resolution

The court finds that Wagon Wheel failed to properly preserve its prospective trust rights because their Notice of Intent/May 1, 2008 letter was sent five months before the creation of its beneficial interests in the PACA trust assets.

> [U]nder the statutory language, a PACA trust is created in favor of unpaid suppliers, sellers, or their agents at the time the perishable commodities are received by a commission merchant, dealer, or broker but, in order to preserve the PACA trust, the beneficiaries are further required to provide written notice to the commission merchant, dealer or broker in receipt of those commodities within a specified time period.

See In re Enoch Packing Company, 2007 WL 1589537 at *4 (citing to 7 U.S.C. §499e(c)(2), (c)(3)).

Wagon Wheel's letter did not comply with 7 U.S.C. §499e(c) because it was prematurely sent to Ballantine before a PACA trust interest had arisen given that Wagon Wheel had not delivered the fruit, and Ballantine had not received the produce, at the time the letter was sent. Simply put, Wagon Wheel could not preserve an interest in a trust claim that did not exist. Additionally, Wagon Wheel did not preserve its trust assets after they delivered the produce to Ballantine, because they did not serve a Notice of Intent within 30 days of the relevant payment term as required by 7 U.S.C. §499e(c)(3). Because Wagon Wheel did not send any Notice of Intent after the creation of its trust interest, Wagon Wheel lost the benefit of the PACA trust. See In re Enoch Packing Company, 2007 WL 1589537 at *4; see also In re Fresh Approach, 51 B.R. at 423.

Wagon Wheel cites to In re Richmond Produce, 112 B.R. 364, 369-370 (Bankr. N.D. Cal.

6

1990) and In re W.L. Bradley Company, Inc., 75 B.R. 505, 511-512 (Bankr. E.D. Pa. 1987) for the proposition that trust notices issued prior to any delinquent payments by the buyer are not premature and are valid. See Wagon Wheel Reply at page 2. In re Richmond and In re W.L. Bradley are distinguishable from the facts of this case because in both of those cases, the supplier issued their trust notices after the delivery of their produce, but before the deadline for payment by the buyer. Both courts found that a supplier's beneficial interest in the PACA trust was created upon delivery of the produce to the buyer, not when payment was due. See In re Richmond, 112 B.R. at 369-370; In re W.L. Bradley, 75 B.R. at 511, 512. Once the suppliers' interests were created in the PACA trust assets (i.e. the delivery of the produce), they had 30 days from the applicable payment term to issue a Notice of Intent to preserve their PACA trust rights. Id. Because both suppliers served their Notices of Intent after the delivery of produce, their claims were ruled valid PACA trust claims despite the fact that their Notices of Intent were served before the applicable payment term expired. Id.

In contrast, it is undisputed that Wagon Wheel served its Notice of Intent around five months before Ballantine actually received the produce. Wagon Wheel could not preserve trust rights that did not exist. Thus, Wagon Wheel failed to properly perfect its trust rights pursuant to the applicable PACA statutes and regulations.[3]

Wagon Wheel argues that to interpret 7 U.S.C. §499e to mean that a grower's rights do not arise until the buyer takes possession of the produce means that a grower's trust rights would depend on arbitrary elements of timing. Wagon Wheel contends that this interpretation would create a situation "where a grower using the "invoice" method of preserving his PACA trust rights could have its rights vitiated simply because the invoice he provided (with the requisite PACA trust language) arrived at the commission merchant hours, or even moments, before the commission merchant actually took possession or control of the fruit itself." See Wagon Wheel

---

[3] The court notes that Wagon Wheel has not cited, and this Court's research did not uncover, any case law that holds that a grower can preserve its trust rights before the rights are created.

7

Reply at page 3.

The court is not persuaded by Wagon Wheel's argument. Wagon Wheel's example is irrelevant because it does not address circumstances under which a non-licensed PACA grower seeks to perfect its trust rights. Rather, Wagon Wheel is citing to 7 U.S.C. §499e(c)(4), which provides for an alternate method of preserving PACA trust rights for licensees. Licensees are entities that hold a valid license issued under PACA. See 7 U.S.C. §499c(a). Essentially, licensees may preserve their trust benefits by using ordinary and usual billing or invoice statements to provide notice of the licensee's intent to preserve the trust, which include certain PACA trust language.[4] See 7 U.S.C. §499e(c)(4). Here, Wagon Wheel has admitted that it was not a PACA licensee, at the time in question. Therefore, Wagon Wheel's argument is inapplicable to the facts of this case.

### IV. Insufficient Information Argument

Because the court has found that Wagon Wheel did not timely serve a Notice of Intent and failed to preserve their trust benefits, it is unnecessary for the court to address Bank of the West's and Kingsburg Group's objections that Wagon Wheel's Notice of Intent contained insufficient information regarding the transactions subject to PACA.

## ORDER

The Court finds that the notice provided and filed by Wagon Wheel was inadequate to preserve the trust benefits created by PACA and the court determines that Wagon Wheel does not have a valid PACA claim.

IT IS SO ORDERED.

**Dated:   February 9, 2010**           /s/ Anthony W. Ishii
                                    CHIEF UNITED STATES DISTRICT JUDGE

---

[4] The court notes that under the plain language of 7 U.S.C. §499e(c)(4), it does not appear that a beneficiary that is not also a licensee can rely on invoices to preserve its trust rights. See In re Enoch Packing Company, Inc. v. Joe Flores, 2007 WL 1589537 (E.D. Cal. June 1, 2007).