# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KINGSBURG APPLE PACKERS INC.<br>D/B/A KINGSBURG ORCHARDS, et. al.<br><br>Plaintiffs,<br><br>v.<br><br>BALLANTINE PRODUCE Co., Inc., et. al.,<br><br>Defendants. | NO. 1:09-CV-901-AWI-JLT<br><br>ORDER ON DIBUDUO'S MOTION<br>TO DETERMINE THE VALIDITY OF<br>PACA CLAIMS<br><br>(Doc. No. 119 ) |

On October 28, 2009, this court issued an order that directed DiBuduo Land Management Company ("DiBuduo") to file a motion with the court to determine the validity of its Perishable and Agricultural and Commodities Act ("PACA") claims. See Doc. No. 116. DiBuduo complied and filed its motion the same day. Kingsburg Group and Bank of the West oppose the motion and assert that DiBuduo's claims are invalid because DiBuduo's Notice of Intent to Preserve Trust Benefits ("Notice of Intent") was served late. For the reasons described below, the court finds that DiBuduo failed to preserve its PACA trust claims.

# FACTUAL BACKGROUND[1]

DiBuduo sold and delivered to Ballantine Produce Co. ("Ballantine") perishable agricultural commodities on credit. See DiBuduo Proof of Claim dated July 29, 2009. DiBuduo was not licensed by the United States Department of Agriculture ("USDA") as a PACA licensee during the period applicable to the transactions. DiBuduo shipped produce to Ballantine between November and December 2008, and delivered shipments in January 2009. Ballantine received and accepted the produce. DiBuduo received accountings from Ballantine in December 2008, and January 2009. DiBuduo alleges that there is no evidence that it entered into a post-default written agreement for different terms.

On June 19, 2009, DiBuduo served a Notice of Intent upon Ballantine. The June 19, 2009 Notice of Intent provides, in pertinent part:

> DiBuduo ... expressly states its intent to preserve trust benefits relating to the commodities described in this notice... The dates of the transactions between the parties to which this notice applies are open and unpaid invoices for deliveries of 2008 commodities (described below) dated January 2, January 8, and January 15, 2009.

See Exhibit A to DiBuduos Motion to Determine Validity of PACA Claims.

According to DiBuduo, it did not send its Notice of Intent prior to June 19, 2009 because Jerry DiBuduo (DiBuduo's president) relied on the representations of principals and managing agents of Ballantine that DiBuduo would be promptly paid for the fruit deliveries. DiBuduo contends that it reasonably relied upon those representations, especially since Jerry DiBuduo personally knew David Albertson ("Albertson"), the treasurer and principal of Ballantine. The Notice of Intent addressed the representations of Albertson as follows:

> Trust claimant through its principal, Jerry DiBuduo was repeatedly advised by Ballantine's principal, David Albertson, that "it was not a question of whether but when" claimant would be paid. Over a two and one half year period, Jerry DiBuduo was negotiating the sale of a property co-owned with Ballantine and later in February 2009 Mr. DiBuduo negotiated the purchase of a Ballantine

---

[1] The factual history is provided for background only and does not form the basis of the court's decision; the assertions contained herein are not necessarily taken as adjudged to be true. The legally relevant facts relied upon by the court are discussed within the analysis.

owned property and as part of those negotiations, was assured that trust claimant's account would be brought current so that sufficient cash would be available for closing the transactions. The first transaction was concluded and trust claimant's grower account partially paid as a result of trust claimant's continued diligence.

The second transaction never materialized but representations were made to Jerry DiBuduo which he reasonably relied on in delaying trust claimant's assertion of this claim. Ballantine at least partially paid when in connection with the first escrow.

Throughout February and March 2009 after trust claimant's repeated requests, some payments were made on the account albeit late payments. These delays interrupted claimant's cash flow and caused claimant to borrow substantial advances on a personal line of credit to pay ordinary operating expenses. From the weeks of March 6, through the week of March 23, 2009, trust claimant received $25,000 per week to reduce the outstanding claim along with further assurances of full payment.

In April 2009, trust claimant was informed by John Pelton, then acting as Ballantine's CEO, that a dispute arose concerning the settlement of the first property transaction and payments were going to be suspended. After trust clamant [sic] promptly provided requested evidence, Mr. Pelton submitted the error and on April 20, 2009, assured trust claimant that he would be paid in full by the first week of May 2009. No payments have been received as of the date of presentation of this claim, less than 45 days after the date by which trust claimant was assured by the then acting CEO of Ballantine that trust claimant would be paid.

Trust claimant has repeatedly pursued payment but was assured payment was forthcoming. Trust claimant received some payments and therefore reasonably relied on the statements. Neither Mr. Albertson nor Mr. Pelton ever denied Ballantine's liability for trust claimant's claim.

See Exhibit A to DiBuduos Motion to Determine Validity of PACA Claims.

DiBuduo alleges that the total amount past due and unpaid from Ballantine totals $100,498.00, all of which qualifies for PACA trust protection.

## DISCUSSION

I. PACA

Congress enacted PACA in 1930 with the intent of "preventing unfair business practices and promoting financial responsibility in the fresh fruit and produce industry." Sunkist Growers, Inc. v. Fisher, 104 F.3d 280, 282 (9th Cir. 1997). Under PACA, a statutory trust is created in favor of all unpaid suppliers or sellers of perishable agricultural commodities upon receipt of such

goods by a "commission merchant, dealer, or broker."[2] The PACA trust "was established by Congress to protect sellers and suppliers of perishable agricultural commodities until full payment of sums due have been received." In re Southland + Keystone, 132 B.R. 632, 639 (9th Cir. BAP 1991), (quoting In re Milton Poulos, Inc., 94 B.R. 648, 650 (Bankr. C.D. Cal. 1988)). The statute provides, in relevant part:

> Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.

7 U.S.C. §499e(c)(2). The PACA trust is a "nonsegregated floating trust" that applies to the perishable "commodities, products derived therefrom, and any receivables or proceeds from their sale in the hands of the commission merchant, dealer, or broker." H.R. REP. NO. 98-98-543, at 2 (1983), reprinted in 1984 U.S.C.C.A.N. 405, 406.

Any supplier or seller of agricultural commodities who gives proper notice of its interest in the PACA trust has a claim against the trust. In re Southland,132 B.R. at 639. PACA requires the beneficiary to preserve its trust right by providing written notice of its intent to preserve the trust within thirty days after the time payment is due. The PACA trust preservation provision provides:

> The unpaid supplier, seller, or agent shall lose the benefits of such trust unless such person has given written notice of intent to preserve the benefits of the trust to the commission merchant, dealer or broker within thirty calendar days (i) after expiration of the time prescribed by which payment must be made, as set forth in regulations issued by the Secretary, (ii) after expiration of such other time by which payment must be made, as the parties have expressly agreed to in writing before entering into the transaction, or (iii) after the time the supplier, seller, or agent has received such notice that the payment instrument promptly presented for payment has been dishonored. The written notice to the commission merchant, dealer, or broker shall set forth information in sufficient detail to identify the transaction subject to the trust. When the parties expressly agree to a payment time period different from that established by the Secretary, a copy of any such agreement shall

---

[2]The term "received" means at "the time when the buyer, receiver, or agent gains ownership, control, or possession of the perishable agricultural commodities." See 7 C.F.R. §46.36(a)(1).

4

>     be filed in the records of each party to the transaction and the terms of payment
>     shall be disclosed on invoices, accountings, and other documents relating to the
>     transaction.

7 U.S.C. §499e(c)(3). If a beneficiary does not comply with the notice requirements, it loses the benefits of the PACA trust. See In re Marvin Properties, Inc., 854 F.2d 1183, 1186 (9th Cir. 1988) ("The language of section 499e(c)(3) is unambiguous on its face. It clearly states that the seller shall lose the trust benefits unless 'such person has given written notice of intent to preserve benefits of the trust to the commission merchant, dealer, or broker and has filed such notice with the Secretary....'"); see also In re Fresh Approach, Inc., 51 B.R. 412, 423 (Bankr. N.D. Tex. 1985) ("Use of the words 'shall lose' and 'preserve' plainly refer to rights or interests existing prior to perfection. The clear meaning of the preservation provisions is that a beneficiary's pre-existing beneficial interest would evaporate absent affirmative steps by such a beneficiary to protect such interests. In short, the beneficial interest arises, by operation of law, upon delivery to a dealer of qualifying produce, and said interest exists unless and until either the claim is satisfied or the beneficiary fails to take the necessary steps to perfect.").

Thus, under the statutory language, a PACA trust is created, in favor of unpaid suppliers, sellers, or their agents at the time the perishable commodities are received by a commission merchant, dealer, or broker but, in order to preserve the PACA trust, the beneficiaries are further required to provide written notice to the commission merchant, dealer, or broker in receipt of those commodities within a specified time period. See 7 U.S.C. §§499e(c)(2), (c)(3). If the beneficiary is a licensee, however, then it may perfect its PACA trust rights by including certain statutory language on its invoices. See 7 U.S.C. §§499e(c)(4). Under the plain language of the statute, a beneficiary that is not also a licensee cannot rely on invoices to preserve its trust rights. See In re Enoch Packing Company, Inc. v. Joe Flores, 2007 WL 1589537 (E.D. Cal. June 1, 2007).

II. DiBuduo's Arguments

DiBuduo contends that it perfected its PACA trust rights for the following reasons: (1) DiBuduo's June 19, 2009 Notice of Intent complied with PACA's statutory timing requirements under 7 U.S.C. §499e(c)(3); (2) DiBuduo preserved its trust rights because it served its Notice of Intent after Ballantine stopped making payments; (3) PACA's timing requirements do not apply to disputed transactions and that a disputed transaction existed between DiBuduo and Ballantine; (4) DiBuduo did not waive its PACA rights because DiBuduo did not enter into a post-default written agreement, oral agreement, or course of dealing, which altered the terms of PACA; and (5) Even if this court determines that the claim was not timely, the objecting parties are estopped from asserting timeliness objections to DiBuduo's claim because Albertson's representations equitably tolled PACA's statute of limitation periods.

III. Resolution

First, the court finds that DiBuduo failed to properly preserve its trust rights because its Notice of Intent was delivered late in violation of 7 U.S.C. §499e(c)(3). In order to comply with PACA regulations, DiBuduo needed to issue its Notice of Intent within thirty days of receiving an accounting from Ballantine. See 7 C.F.R. §46.2(aa)(9). Dibuduo alleges in its Proof of Claim that Ballantine submitted accountings between December 6, 2008 and January 16, 2009. Thus, DiBuduo should have served its Notice of Intent between January 5 and February 15, 2009. However, it is undisputed that DiBuduo served its Notice of Intent on June 19, 2009. Because DiBuduo sent its Notice of Intent several months after the applicable statutory deadline, DiBuduo lost the benefit of the PACA trust. See In re Marvin, 854 F.2d at 1186; In re Fresh Approach, 51 B.R. at 423. Therefore, DiBuduo did not timely preserve its trust rights under PACA.

Second, the court is not convinced by DiBuduo's argument that it preserved its trust rights because it served its Notice of Intent after Ballantine stopped making payments as opposed to the deadlines provided by PACA. DiBuduo relies on In re Marvin Properties and In re Richmond Produce, 112 B.R. 364 (Bankr. N.D. Cal. 1990) to support its argument. In re Marvin and In re

Richmond are not helpful to DiBuduo's position because neither case involved a grower who submitted a late notice and neither case held that PACA deadlines are tolled until the grower realizes that the buyer can no longer make payment. In re Marvin merely held that a grower's failure to give notice to the buyer resulted in a forfeiture of trust benefits. In re Richmond is distinguishable because the suppliers there served their Notice of Intent before the applicable PACA payment term had expired. Id. In contrast, it is undisputed that DiBuduo served its Notice of Intent several months after the applicable PACA deadline had expired.

Third, with respect to DiBuduo's "disputed transaction" argument, the court does not find merit to this argument. DiBuduo correctly states that PACA's prompt payment deadlines only apply to undisputed amounts.[3] DiBuduo, however, fails to allege that there was a disputed amount that related to the delivery of fruit. Instead, DiBuduo represented in its June 29, 2009 Proof of Claim filed with this Court that:

> In April 2009, trust claimant was informed by John Pelton, then acting as Ballantine's CEO, that a dispute arose concerning the settlement of the first property transaction and payments were going to be suspended. After the trust clamant [sic] promptly provided requested evidence, Mr. Pelton admitted the error and on April 20, 2009, assured trust claimant that he would be paid in full by the first week of May 2009.

See Exhibit A to DiBuduos Motion to Determine Validity of PACA Claims. Based on DiBuduo's admissions in its Proof of Claim, the dispute between DiBuduo and Ballantine relates to a property transaction and does not relate to fruit delivery. Furthermore, DiBuduo does not allege that it ever disputed the accuracy of the accountings that it received from Ballantine in December 6, 2008, and January 16, 2009.

Fourth, the court is not persuaded by DiBuduo's argument that it did not waive its trust rights because it did not enter into any post-default agreements (i.e. a written agreement or oral agreement, or course of dealings) that extended the payment terms provided by PACA. In the instant matter, the presence or absence of a post-default agreement is irrelevant because DiBuduo

---

[3] 7 C.F.R. §46.2(aa) provides in part: "If there is a dispute concerning a transaction, the foregoing time periods for prompt payment apply only to payment of the undisputed amount."

7

did not timely file a Notice of Intent. DiBuduo relies on Hull Company v. Hauser's Foods, Inc., 924 F.2d 777 (8th Cir. 1991) and Patterson Frozen Food v. Crown Foods International, 307 F.3d 666 (7th Cir. 2002) to establish that it did not waive its rights. DiBuduo argues that these cases establish that PACA is to be construed liberally in favor of sellers and that oral agreements or "course of dealing" will not abrogate PACA trust rights. While the court accepts the general principle that PACA is to be construed liberally, these cases do not aid DiBuduo's position. Neither Patterson nor Hull dealt with a Notice of Intent that was served outside of the PACA deadlines.

The Hull court held that an oral agreement had no effect on a seller's rights to trust protection. Hull, 924 F.2d at 783. Importantly, the Hull court specifically stated that it was not expressing an opinion on the validity of the district court's determination that the grower's Notice of Intent was valid. Thus, Hull is not applicable to the facts of this case.

Patterson is distinguishable from the facts of this case because the Patterson court focused on whether a post-default written agreement between the parties nullified the grower's PACA trust rights where a seller had preserved its rights by including the required PACA statutory language in its invoices. See Patterson, 307 F.3d at 668. Here, it is undisputed that DiBuduo was not a PACA licensee and needed to preserve its rights by timely filing a Notice of Intent. Therefore, even assuming that DiBuduo did not enter into any post-default agreements, it does not change the fact that DiBuduo did not comply with PACA and timely file a Notice of Intent.

Accordingly, DiBuduo failed to properly perfect its trust rights pursuant to the applicable PACA statutes and regulations because it did not timely serve its Notice of Intent.

IV.   Equitable Tolling Argument

The facts of this case do not support an extension of the PACA deadlines. DiBuduo argues that it diligently pursued collection for the outstanding balance from Ballantine. The relevant question, however, is whether DiBuduo diligently preserved its trust rights. After reviewing DiBuduo's efforts to preserve its trust rights, the court finds that DiBuduo did not

exercise diligence in protecting its trust rights, namely, because DiBuduo did not timely file a Notice of Intent. Furthermore, DiBuduo does not explain in its briefs why it was not able to timely file a Notice of Intent.

DiBuduo relies on Santa Maria v. Pacific Bell, 202 F.3d 1170, 1178 (9th Cir. 2000) and asserts that: "equitable tolling focuses on the plaintiff's excusable ignorance of the limitations period and on lack of prejudice to the defendant." DiBuduo, however, does not present any facts to the court that would excuse it from not complying with PACA's limitations period. DiBuduo seems to be arguing that because it received verbal promises of full payment from Ballantine, that the PACA's deadlines should not be enforced. The court does not find that assurances of payment from Ballantine excuses DiBuduo from complying with PACA in light of the fact that DiBuduo was aware of the PACA deadlines, and was aware that Ballantine was late in paying the fruit invoices. See DiBuduo's Notice of Intent ("In February and March 2009 after [DiBuduo's] repeated requests, some payments were made on the account albeit *late* payments") (emphasis added).

Additionally, DiBuduo alleges in its Notice of Intent that the last payment from Ballantine was received on March 23, 2009. Therefore, even if the court could look past PACA's prompt payment terms and allow DiBuduo to submit a Notice of Intent from the date of last payment received as opposed to when the invoices were due as required by PACA, Dibuduo's Notice of Intent was still late because it was not served until June 19, 2009.

Accordingly, for the reasons listed above, the court finds that DiBuduo has not met its burden to establish excusable ignorance of the PACA limitations period.

//
//
//
//

## **ORDER**

The Court finds that the notice filed by DiBuduo was untimely and failed to preserve the trust benefits created by PACA. Thus, the court determines that DiBuduo does not have a valid PACA claim.

IT IS SO ORDERED.

**Dated:**    **February 18, 2010**            /s/ **Anthony W. Ishii**
CHIEF UNITED STATES DISTRICT JUDGE