**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KINGSBURG APPLE PACKERS INC. )<br>D/B/A KINGSBURG ORCHARDS, et. al. )<br>                                                              )<br>            Plaintiffs,             )<br>                                                              )<br>      v.                                                 )<br>                                                              )<br>BALLANTINE PRODUCE Co., Inc., et. al., )<br>                                                              )<br>            Defendants.           )<br>_____)<br>WAGON WHEEL FARMS, INC., a        )<br>California corporation,                          )<br>                                                              )<br>            Intervenor Plaintiff,   )<br>                                                              )<br>      v.                                                 )<br>                                                              )<br>BALLANTINE PRODUCE CO., Inc. et. al. )<br>                                                              )<br>            Defendants.           )<br>_____) | NO. 1:09-CV-901-AWI-JLT<br><br>ORDER GRANTING DEFENDANT<br>BANK OF THE WEST'S MOTION<br>TO DISMISS<br><br>(Doc. No. 159) |

   This case comes before the Court on Defendant Bank of the West's ("Bank") motion to dismiss plaintiff intervenor Wagon Wheel Farms, Inc.'s ("Wagon Wheel") claims brought under the Perishable and Agricultural and Commodities Act ("PACA") and related state claims against various defendants. For the reasons that follow, the motion to dismiss will be granted.

# FACTUAL HISTORY[1]

Wagon Wheel alleges that in 2008, it entered into an oral contract with Ballantine Produce Co. ("Ballantine"), where by Ballantine was to be the "exclusive commission merchant and sales broker for all of [Wagon Wheel's] fruit produced during the 2008-2009 season." See FAC ¶17. Throughout the 2008-2009 harvest season, Wagon Wheel performed its obligations by delivering marketable fruit to Ballantine for packing and marketing. As of April 2009, Wagon Wheel had delivered fruit to Ballantine worth $1,048,727.52, but Ballantine had only paid Wagon Wheel $30,421.30, leaving a balance owing to Wagon Wheel of $1,018,306.22. Wagon Wheel alleges that various defendants used the proceeds received from Wagon Wheel's fruits for its own uses, including paying off preferred creditors, like Bank.

Wagon Wheel contends that the monies paid by Ballantine to Bank were wrongfully converted because the proceeds were impressed with a California producer's lien (California Food and Agriculture Code § 55631), which is superior in priority to the liens or security of all other creditors, including Bank. Wagon Wheel alleges that Bank may have a security interest in the farm products delivered by Wagon Wheel and/or the proceeds derived from the sale of the farm products. Wagon Wheel alleges that Bank has been unjustly enriched because Bank knew that Wagon Wheel was expending significant "culture costs" in the production and harvesting of the farm products it delivered to Ballantine, and because Bank either requested and/or acquiesced to Wagon Wheel's expenditure of cultural costs. Wagon Wheel claims that Bank has benefitted from Wagon Wheel's production and harvesting of the farm products.

## PROCEDURAL BACKGROUND

On October 29, 2009, Wagon Wheel filed a motion to determine the validity of its PACA claims. On February 9, 2010, the Court found that Wagon Wheel did not have a valid PACA claim because it had failed to preserve its trust assets. On February 5, 2010, Wagon Wheel filed

---

[1] The factual history is provided for background only and does not form the basis of the court's decision; the assertions contained herein are not necessarily taken as adjudged to be true. The legally relevant facts relied upon by the court are discussed within the analysis.

a first-amended complaint in intervention ("FAC"). Wagon Wheel's FAC alleges the following claims for relief: (1) Breach of Contract against defendants Ballantine, David Albertson ("David"), Eric Albertson ("Eric"), Richard Graham ("Graham"), and Virgil Rasmussen ("Rasmussen"); (2) Enforcement of PACA Trust, 7 U.S.C. §499 (e)(c)(4) against defendants Ballantine, David, Eric, Graham, Rasmussen, and Bank; (3) Violation of PACA, 7 U.S.C. § 499b(4) - Failure to Account and Pay Promptly against defendants Ballantine, David, Eric, Graham, and Rasmussen; (4) Violation of PACA, 7 U.S.C. § 499b(4) - False and Misleading Statement Relating to a PACA transaction against defendants Ballantine, David, Eric, Graham, and Rasmussen; (5) Breach of Fiduciary Duty against defendants Ballantine, David, Eric, Graham, and Rasmussen; (6) Conversion against defendants Ballantine, David, Eric, Graham, Rasmussen, and Bank; (7) Constructive Fraud against defendants Ballantine, David, Eric, Graham, and Rasmussen; (8) Constructive Trust and Accounting against all defendants; (9) Quantum Meruit against defendants Bank, Redwood Farms, and Babijuice; and (10) Enforcement of California Producer's Lien (Cal. Food & Ag. Code § 55631) against all defendants.

Bank now moves to dismiss Wagon Wheel's Sixth, Eighth, Ninth, and Tenth claims for relief for failure to state a claim. On March 12, 2010, Wagon Wheel filed an opposition. On March 22, 2010, Bank filed a reply.

On March 24, 2010, the court took the matter under submission without oral argument.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008); Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken

3

as true and construed in the light most favorable to the non-moving party. Marceau v. Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008); Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1999). The Court must also assume that general allegations embrace the necessary, specific facts to support the claim. Smith v. Pacific Prop. and Dev. Corp., 358 F.3d 1097, 1106 (9th Cir. 2004); Peloza v. Capistrano Unified Sch. Dist., 37 F.3d 517, 521 (9th Cir. 1994). But, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1056-57 (9th Cir. 2008); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). Although they may provide the framework of a complaint, legal conclusions are not accepted as true and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009); see also Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003). Furthermore, Courts will not assume that plaintiffs "can prove facts which [they have] not alleged, or that the defendants have violated . . . laws in ways that have not been alleged." Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court has recently explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Thus, to "avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 129 S.Ct. at 1949; see Twombly, 550 U.S. at 570; see also Weber v. Department of Veterans Affairs, 521 F.3d 1061, 1065 (9th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949.

The plausibility standard is not akin to a 'probability requirement,' but it asks more

> than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'
> . . .
> Determining whether a complaint states a plausible claim for relief will . . . be a context specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief.

Iqbal, 129 S.Ct. at 1949-50.  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  Moss v. United States Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

If a Rule 12(b)(6) motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc).  In other words, leave to amend need not be granted when amendment would be futile.  Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002).

## DISCUSSION

### I. Tenth Claim for Relief - Enforcement of California Producer's Lien (Cal. Food & Ag. Code § 55631

<u>Bank's Argument</u>

Bank argues that Wagon Wheel's claim for enforcement should be dismissed because Wagon Wheel does not have a producer's lien.  Bank contends that a producer's lien only exists if the product is sold to a "processor" and Wagon Wheel has not alleged and cannot allege that Ballantine is a processor.

<u>Wagon Wheel's Argument</u>

Wagon Wheel argues that it does have a producer's lien and that Ballantine was engaged in the "packing" of Wagon Wheel's fruit.  Wagon Wheel argues in its opposition that the packing

5

performed by Ballantine, "involves the processing of fruit, by among other things, sorting, treating with various preservatives, and packaging the farm product." See Wagon Wheel's Opposition at page 8.

Resolution

Wagon Wheel's claim fails because it does not allege that Ballantine was a processor under Cal. Food & Ag. Code §55407 ("Section 55407"). Cal. Food & Ag. Code §55631 ("Section 55631"), provides that every producer of any farm product that sells any product, which is grown by him to any processor under contract, has a lien upon such product and upon all processed or manufactured forms of such farm product. Section 55407 defines "processor," in pertinent part, as:

> any person that is engaged in the business of processing or manufacturing any farm product, that solicits, buys, contracts to buy, or otherwise takes title to, or possession or control of, any farm product from the producer of the farm product for the purpose of processing or manufacturing it and selling, reselling, or redelivering it in any dried, canned, extracted, fermented, distilled, frozen, eviscerated, or other preserved or processed form.

See Cal. Food & Ag. Code § 55407.

Wagon Wheel alleges that "Ballantine was to be the exclusive commission merchant and sales broker for all of Wagon Wheel's fruit produced during the 2008-2009 harvest season. In exchange for packing and marketing this fruit, Ballantine was to receive a packing fee and percentage commission on all gross sales of the fruit." See FAC ¶17. Wagon Wheel alleges that "Ballantine took possession of said commodities for the purpose of acting as Wagon Wheel's broker and/or commission merchant to sell Wagon Wheel's commodities and collect the sum due." See FAC ¶89.

Wagon Wheel's allegations that Ballantine was a commission merchant and sales broker are insufficient for two reasons. First, Wagon Wheel does not allege that Ballantine took possession of the fruit for the purpose of processing or manufacturing the fruit. Although Wagon Wheel alleges that Ballantine packed and marketed the fruit, it is not clear to the Court that packing or marketing constitutes "processing" or "manufacturing" within Section 55407. Wagon

6

Wheel does not provide any legal basis to support its argument that packing or marketing constitutes processing fruit. Second, Wagon Wheel does not allege that Ballantine took possession of the tree fruit for purposes of reselling it in one of the forms identified in Section 55407, such as "dried, canned, extracted, fermented, distilled, frozen, eviscerated, or other preserved, or processed form." See Section 55407. Because Wagon Wheel has failed to allege that Ballantine is a processor, Wagon Wheel would not be entitled to a producer's lien under Section 55631.

Accordingly, Wagon Wheel's Tenth claim for enforcement of a lien is dismissed. However, it is not clear that amendment would be futile. Dismissal will be with leave to amend for Wagon Wheel to make factual allegations that show that Ballantine was a processor under Section 55631, who conducted the enumerated activities under Section 55407.[2]

## II.     Sixth Claim for Relief - Conversion

Bank's Argument

Bank argues that Wagon Wheel has not alleged that it was entitled to possession of the money at the time that Bank received the proceeds. Bank asserts that Wagon Wheel's allegation that the proceeds were subject to a producer's lien does not establish Wagon Wheel's right to possession.

Wagon Wheel's Argument

Wagon Wheel argues that it had a right to possession of the proceeds of the fruit because Wagon Wheel had a producer's lien on the proceeds. Wagon Wheel alleges that its producer's lien is a lien superior in right to the rights of other secured lenders, including Bank. Wagon Wheel asserts that Bank is liable in conversion because Ballantine had no right to transfer Wagon Wheel's fruit proceeds to Bank and, Bank received and possessed the converted funds.

Resolution

In a conversion action, Wagon Wheel has to allege that it had ownership or a right to

---

[2] Wagon Wheel is granted leave to amend subject to Fed. R. Civ. P. 11(b).

possession of the property at the time of the conversion. <u>Oakdale Village Group v. Fong</u>, 43 Cal.App.4th 539, 543-544 (1996). Wagon Wheel claims that it had ownership or a right to possession because it had a producer's lien. Therefore, Wagon Wheel's claim for conversion is dependent on Wagon Wheel having a valid producer's lien. As discussed above, Wagon Wheel's enforcement of a lien claim has been dismissed with leave to amend. Wagon Wheel's conversion claim falls with the producer's lien claim. Accordingly, Wagon Wheel's sixth claim is dismissed with leave to amend.

### III.  Eighth Claim for Relief - Constructive Trust

<u>Bank's Argument</u>

Bank argues that Wagon Wheel's eighth claim for relief is dependent upon its claim for conversion and, because the claim for conversion fails, the trust claim fails as well.

<u>Wagon Wheel's Argument</u>

Wagon Wheel argues that they are entitled to a constructive trust because Bank is liable in conversion for possession and retention of funds converted by Ballantine.

<u>Resolution</u>

A constructive trust claim is a remedy for a valid conversion claim. <u>Burlesci v. Petersen</u>, 68 Cal.App.4th 1062, 1069 (1998). Because Wagon Wheel's conversion claim has been dismissed, Wagon Wheel's eighth claim is dismissed with leave to amend.

### IV.  Ninth Claim for Relief - Quantum Meruit

<u>Bank's Argument</u>

Bank argues that a secured creditor is subject to a quantum meruit claim only where the secured creditor initiated or encouraged the transaction that created the unsecured obligation. Bank argues that Wagon Wheel does not allege that Bank agreed to pay Wagon Wheel or that there was some understanding or expectation that compensation was to be made by Bank.

<u>Wagon Wheel's Argument</u>

Wagon Wheel argues that it has alleged sufficient facts to maintain a claim for quantum

8

meruit because: (1) Bank may have a security interest in the farm products delivered by Wagon Wheel; (2) Bank either requested or acquiesced in the expenditures that Wagon Wheel made; (3) the expenditures were necessary to the development and preservation of the crop; and (4) Bank benefitted from those expenditures.

Resolution

Generally, a secured creditor, who obtains a defaulted debtor's property, is not subject to a restitution claim for the amount of the value of the goods furnished to the debtor by an unsecured creditor. Knox v. Phoenix Leasing, Inc., 29 Cal. App.4th 1357, 1359 (1994). Absent "unusual circumstances, the equitable remedy of restitution must defer to the rights given a secured creditor by the California Uniform Comercial Code." Id. These limited circumstances include: (1) where the "secured creditor initiates or encourages transactions between the debtor and suppliers of goods or services," Id. at 1363; or (2) where the goods or services provided by the third party are necessary to preserve the collateral. Id. at 1365-66. The Knox court reasoned that where a secured creditor "had an active hand in promoting a transaction that goes bad, a secured creditor should not escape with a victimized supplier left behind holding an empty bag alone." Id. at 1365. In addition, the Knox court stated that in a case where an unsecured creditor provides goods or services that are necessary to preserve the collateral, (i.e. an expense the secured creditor would ordinarily incur as part of its duty to use reasonable care in the custody and preservation of the collateral in its possession), "the unsecured status of the creditor appears less important than the fact that the secured creditor directly benefits from expenditures the creditor is spared from having to make on its own behalf." Id. at 1366.

To recover in quantum meruit, a party need not prove that a contract existed but must show that the circumstances were such that "the services were rendered under some understanding or expectation of both parties that compensation therefore was to be made." Huskinson & Brown, LLP v. Wolf, 32 Cal.4th 453, 458 (2004) (internal citations omitted); see also Knox, 29 Cal.App.4th at 1367 (discussing expectation of unsecured creditor and finding that the unsecured

9

creditor did not have any expectation of payment from the secured creditor given that the unsecured creditor did not have knowledge of the secured creditor at the time the unsecured creditor contracted with the debtor).

A creditor does not have a claim for quantum meruit against a secured creditor on the basis that the secured creditor benefitted from the labor or material of the other creditor. Id. at 1365. "The mere fact of augmenting or enhancing the collateral's value is by itself insufficiently notable to justify special equitable protection from article 9's[3] priority structure. If allowed, this exception would swallow the rule." Id. at 1367.

Wagon Wheel's claim fails for two reasons. First, assuming that Bank is a secured creditor and that Bank "requested" the transactions between Wagon Wheel and Ballantine, Wagon Wheel's claim nevertheless fails because it has not alleged facts that show that Wagon Wheel had an expectation of payment from Bank. See Huskinson, 32 Cal.4th at 458; see also Knox, 29 Cal. App.4th at 1367. Wagon Wheel does not allege that it had any knowledge of Bank at the time Wagon Wheel orally contracted with Ballantine in 2008. Wagon Wheel does not claim that at the time of contracting between Ballantine and Wagon Wheel that Wagon Wheel or Bank contemplated that Bank would be the true source of Ballantine's payments to Wagon Wheel.

Second, Wagon Wheel has not alleged sufficient facts to show that its harvesting and cultural expenditures were necessary to preserve the collateral covered by Bank's security interest. Wagon Wheel alleges that Bank may have a security interest in the farm products delivered by Wagon Wheel. Assuming that Wagon Wheel's delivered fruit is the collateral,[4] it is unclear to the Court how Wagon Wheel preserved the collateral, as it appears that Ballantine would not have had a right in the fruit until it was in Ballantine's possession. Wagon Wheel has not alleged that it

---

[3]Article 9 refers to California Uniform Comercial Code Article 9.

[4]It is not entirely clear to the Court what the collateral is in this matter. Wagon Wheel alleges that the collateral is the delivered fruit. Bank contends that pursuant to a security agreement between Ballantine and Bank, Bank had a security interest in Ballantine's personal property, including all crops and farm products.

incurred any expenditures after the fruit was delivered.  Therefore, any costs that were incurred to preserve the fruit would seem to have been incurred by Ballantine, as the packer and broker of the fruit.

Accordingly, Wagon Wheel's ninth claim is dismissed.  Dismissal will be with leave to amend for Wagon Wheel to make additional factual allegations that show that Wagon Wheel had an expectation of payment from Bank and that Wagon Wheel incurred expenditures that were necessary to the actual preservation of the collateral after the fruit was delivered to Ballantine.

**ORDER**

For the reasons discussed above, the Court orders that:

1. Bank's motion to dismiss Wagon Wheel's Sixth, Eighth, Ninth, and Tenth claims against it is GRANTED with leave to amend; and
2. Wagon Wheel is to file an amended complaint on or by July 20, 2010.

IT IS SO ORDERED.

Dated:   July 3, 2010

CHIEF UNITED STATES DISTRICT JUDGE

11