**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KINGSBURG APPLE PACKERS, INC.<br>D/B/A KINGSBURG ORCHARDS, et. al.<br><br>    Plaintiffs,<br><br>    v.<br><br>BALLANTINE PRODUCE CO., INC.,<br>  et. al.,<br><br>    Defendants.<br>_____<br>WAGON WHEEL FARMS, INC., a<br>California corporation,<br><br>    Intervenor Plaintiff,<br><br>    v.<br><br>BALLANTINE PRODUCE CO., INC.<br>  et. al.<br><br>    Defendants.<br>_____ | NO. 1:09-CV-901-AWI-JLT<br><br>ORDER GRANTING DEFENDANT<br>VIRGIL RASMUSSEN'S MOTION<br>TO DISMISS<br><br>(Doc. No. 172) |

    This case comes before the Court on Defendant Virgil Rasmussen's ("Rasmussen") motion to dismiss plaintiff intervenor Wagon Wheel Farms, Inc.'s ("Wagon Wheel") claims brought under the Perishable and Agricultural and Commodities Act ("PACA") and related state claims against various defendants. For the reasons that follow, the motion to dismiss will be

granted.

# FACTUAL HISTORY[1]

Wagon Wheel alleges that, in 2008, it entered into an oral contract with Ballantine Produce Co. ("Ballantine"), where Ballantine was to be the "exclusive commission merchant and sales broker for all of Plaintiff's fruit produced during the 2008-2009 season." See FAC ¶17. Throughout the 2008-2009 harvest season, Wagon Wheel performed its obligations by delivering marketable fruit to Ballantine for packing and marketing. As of April 2009, Plaintiff had delivered fruit to Ballantine worth $1,048,727.52, but Ballantine had only paid Wagon Wheel $30,421.30, leaving a balance of $1,018,306.22. Wagon Wheel alleges that throughout the 2008-2009 harvest season, "Defendants continued to assure Plaintiff on multiple occasions that Plaintiff would be paid in full for all fruit delivered to Ballantine." See FAC ¶21. Wagon Wheel alleges that defendants continued to take fruit from Wagon Wheel even though Ballantine was insolvent. Wagon Wheel alleges that various defendants used the proceeds received from Wagon Wheel's fruits for its own uses, including paying off preferred creditors. Wagon Wheel contends that the monies paid by Ballantine to defendant Bank of the West ("Bank") were wrongfully converted because the proceeds were impressed with a California producer's lien (California Food and Agriculture Code § 55631), which is superior in priority to the liens or security of all other creditors, including Bank.

<u>Wagon Wheel's Alter Ego and Personal Liability Allegations</u>

Wagon Wheel alleges that Rasmussen is now and at all relevant times, was, the principal investor, manager, the chief executive officer, and part-owner of Ballantine. Wagon Wheel alleges that there exists a unity of interest and ownership between Ballantine, Redwood Farms, Inc., ("Redwood Farms"), Babijuice Corporation of California ("Babijuice") (collectively

---

[1] The factual history is provided for background only and does not form the basis of the court's decision; the assertions contained herein are not necessarily taken as adjudged to be true. The legally relevant facts relied upon by the court are discussed within the analysis.

2

"Corporate Defendants") and David Albertson ("David"), Eric Albertson ("Eric"), and Rasmussen (collectively "Individual Defendants"), as the owners of these Corporate Defendants. Wagon Wheel alleges that "each named Defendant and each fictitiously named Defendant acted as an agent, employee, subsidiary, alter ego, or representative, of each other Defendant..." See First-Amended Complaint ("FAC") ¶12. Wagon Wheel alleges that any individuality and separateness between these Corporate Defendants and the other Individual Defendants has ceased to exist, and the Corporate Defendants are the alter egos of these Individual Defendants. Wagon Wheel alleges that Ballantine, Redwood, Babijuice were inadequately capitalized and lacked the financial resources to satisfy their obligations as they became due. Wagon Wheel contends that the Corporate Defendants were "mere shells without capital assets, and/or were conceived, intended, and/or used by Defendants David, Eric, and Rasmussen, as devices to avoid individual liability and for the purpose of substituting a financially insolvent corporate entity in place of themselves." See FAC ¶14. Wagon Wheel alleges that to adhere to the fiction of the separate existence of these Corporate Defendants would produce an inequitable result. See FAC ¶15. Wagon Wheel alleges that "defendants received the proceeds from the sale of Plaintiff's cosigned farm products and intentionally commingled the funds with defendants' general corporate accounts." See FAC ¶22.

## PROCEDURAL BACKGROUND

On October 29, 2009, Wagon Wheel filed a motion to determine the validity of its PACA claims. On February 9, 2010, the Court found that Wagon Wheel did not have a valid PACA claim because it had failed to preserve its trust assets. On February 5, 2010, Wagon Wheel filed its FAC. The FAC alleges the following claims for relief: (1) Breach of Contract against defendants Ballantine, David, Eric, Graham, and Rasmussen; (2) Enforcement of PACA Trust, 7 U.S.C. §499 (e)(c)(4) against defendants Ballantine, David, Eric, Graham, Rasmussen, and

Bank[2]; (3) Violation of PACA, 7 U.S.C. § 499b(4) - Failure to Account and Pay Promptly against defendants Ballantine, David, Eric, Graham, and Rasmussen; (4) Violation of PACA, 7 U.S.C. § 499b(4) - False and Misleading Statement Relating to a PACA transaction against defendants Ballantine, David, Eric, Graham, and Rasmussen; (5) Breach of Fiduciary Duty against defendants Ballantine, David, Eric, Graham, and Rasmussen; (6) Conversion against defendants Ballantine, David, Eric, Graham, Rasmussen, and Bank; (7) Constructive Fraud against defendants Ballantine, David, Eric, Graham, and Rasmussen; (8) Constructive Trust and Accounting against all defendants; (9) Quantum Meruit against defendants Bank, Redwood Farms, and Babijuice; and (10) Enforcement of California Producers' Lien (Cal. Food & Ag. Code § 55631) against all defendants.

Rasmussen now moves to dismiss Wagon Wheels' FAC relief for failure to state a claim. On March 12, 2010, Wagon Wheel filed an opposition. On March 22, 2010, Rasmussen filed a reply.

On March 24, 2010, the court took the matter under submission without oral argument.

## **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008); Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Marceau v. Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008); Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1999). The Court must also assume that general allegations embrace the necessary, specific facts

---

[2] Wagon Wheel concedes that based on the Court's February 9, 2010 Order, the second claim for relief has been rendered moot.

4

to support the claim. Smith v. Pacific Prop. and Dev. Corp., 358 F.3d 1097, 1106 (9th Cir. 2004); Peloza v. Capistrano Unified Sch. Dist., 37 F.3d 517, 521 (9th Cir. 1994). But, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1056-57 (9th Cir. 2008); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). Although they may provide the framework of a complaint, legal conclusions are not accepted as true and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009); see also Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003). Furthermore, Courts will not assume that plaintiffs "can prove facts which [they have] not alleged, or that the defendants have violated . . . laws in ways that have not been alleged." Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court has explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Thus, to "avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 129 S.Ct. at 1949; see Twombly, 550 U.S. at 570; see also Weber v. Department of Veterans Affairs, 521 F.3d 1061, 1065 (9th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949.

> The plausibility standard is not akin to a 'probability requirement,' but it asks more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'
> . . .
> Determining whether a complaint states a plausible claim for relief will . . . be a

5

context specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief.

Iqbal, 129 S.Ct. at 1949-50. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. United States Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

If a Rule 12(b)(6) motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc). In other words, leave to amend need not be granted when amendment would be futile. Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002).

## DISCUSSION

### I. Timeliness of Motion to Dismiss

As an initial matter, Wagon Wheel argues that Rasmussen's motion to dismiss is untimely because Rasmussen filed his motion to dismiss after he filed his answer. Rasmussen responds that his motion was timely filed because he filed it before he filed his answer. The Court finds that Rasmussen did timely file his motion to dismiss because he originally filed his motion to dismiss on February 26, 2010, and filed his answer on March 22, 2010. A motion to dismiss is timely if it is filed before a responsive pleading. See Aetna Life Ins. Co. v. Alla Medical Services, Inc., 855 F.2d 1470, 1474 (9th Cir. 1988); Fed. R. Civ. P. 12(b)(6). It appears that Rasmussen refiled his February 26, 2010 motion to dismiss on April 27, 2010, at the direction of the Clerk's Office because his originally filed motion to dismiss had not been set for a hearing date. A successive filing of a motion does not waive a parties' original motion. Simply because Rasmussen did not obtain a hearing date does not make his motion untimely filed. Therefore,

6

Rasmussen's motion to dismiss was timely filed and will be considered by the Court.

### II. Alter Ego Allegations

#### Rasmussen's Argument

Rasmussen argues that Wagon Wheel's allegations do not support alter ego liability because it merely recites elements of the alter ego doctrine without a factual basis. Rasmussen contends that Wagon Wheel fails to allege how each corporation is connected to each person or to the other corporations. Rasmussen asserts that Wagon Wheel fails to allege what any of the individual defendants did that would justify piercing the corporate veil.

#### Wagon Wheel's Argument

Wagon Wheel argues that its allegations are sufficient because it alleges that Ballantine was not sufficiently capitalized and Rasmussen was the principal owner, manager, chief executive officer, and part-owner of Ballantine.

#### Resolution

Wagon Wheel asserts nine claims for relief against various individual defendants, including Rasmussen, by virtue of the alter ego doctrine.[3] The Court finds that the FAC is deficient for several reasons: (1) the FAC contains primarily conclusory allegations that merely recite the factors considered by courts when evaluating alter ego claims; (2) the FAC does not specify which Corporate Defendant is the alter ego of which other corporate entity and/or which Individual Defendant is the alter ego of which Corporate Defendant; and (3) the FAC does not allege what each individual defendants did that would justify piercing the corporate veil.

In order for the acts of a corporation to be legally recognized as being controlled by an individual person, California law requires:

> First, that the corporation is not only influenced and governed by that person, but that there is such a unity of interest and ownership that the individuality, or separateness of the said person and corporation has ceased; [and] second, that the factors are such that an

---

[3] The claims for relief that Wagon Wheel asserts against Rasmussen are all based on the existence of an alter ego relationship. Because the Court finds that Wagon Wheel has failed to plead a valid alter ego relationship, the entire FAC fails as to Rasmussen.

7

> adherence to the fiction of the separate existence of the corporation, would under the particular circumstances, sanction a fraud or promote injustice.

Firstmark Capital Corp. v. Hempel Financial Corp., 859 F.2d 92, 94 (9th Cir. 1988), citing Wood v. Elling Corp., 20 Cal.3d 353 (1977).  The factors to be considered in determining whether the alter ego doctrine applies include, the commingling of funds and other assets, the individual holding himself out as liable for the debts of the corporation, ownership and control of the corporation by the individual, inadequate capitalization, disregard of corporate formalities, and lack of segregation of corporate records.  See Sonora Diamond Corp. v. Superior Court of Tuolumme County, 83 Cal.App.4th 523, 538-39 (2000); MidCentury Insurance Co. v. Gardner, 9 Cal.App.4th 1205, 1213, n.3 (1992).

As to the second requirement for finding alter ego, the Ninth Circuit has stated that "under California law the kind of equitable result that makes alter ego liability appropriate is an abuse of the corporate form, such as under-capitalization or misrepresentation of the corporate form to creditors."  Firstmark, 859 F.2d at 94, citing Orloff v. Allman, 819 F.2d 904, 909 (9th Cir. 1987).  "[I]t is not sufficient to merely show that a creditor will remain unsatisfied if the corporate veil is not pierced, and thus set up such an unhappy circumstance as proof of an 'inequitable result.'" Associated Vendors, Inc., v. Oakland Meat Co., 210 Cal. App.2d 825, 842 (1962).  "The purpose of the doctrine is not to protect every unsatisfied creditor , but rather to afford him protection, where some conduct amounting to bad faith makes it inequitable, under the applicable rule above cited, for the equitable owner of a corporation to hide behind its corporate veil."  Id.

Wagon Wheel alleges in a conclusory fashion that "each named Defendant and each fictitiously named Defendant" acted as an alter ego of each other Defendant.  See FAC ¶12. Wagon Wheel further alleges that alter ego liability should be recognized because:  (1) a unity of interest and ownership existed between Ballantine, Redwood Farms, Babijuice and David, Eric, and Rasmussen; (2) any individuality and separateness between the Corporate Defendants and the other Individual Defendant owners has ceased to exist and the Corporate Defendants are the alter ego of the Individual Defendants; (3) Ballantine, Redwood, and Babijuice were inadequately

capitalized; (4) Corporate Defendants were mere shells without capital assets, and were conceived, intended, and/or used by David, Eric, and Rasmussen as devices to avoid individual liability; (5) to adhere to the fiction of the separate existence of these Defendants would produce an inequitable result; and (6) Defendants received the proceeds from the sale of Wagon Wheel's cosigned farm products and intentionally commingled the funds with Defendants' general corporate accounts.

Wagon Wheel's allegations are insufficient to plead an alter ego relationship because they are conclusory and merely recite the factors that a court considers in evaluating alter ego claims. The Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d at 1056-57; Sprewell, 266 F.3d at 988. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. "[T]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S.Ct. at 1949-50.

Further, the Court is troubled by Wagon Wheel's failure to allege how each Corporate Defendant is linked to each Individual Defendant or to the other corporations. As pleaded, there is no way to distinguish the relationships of the various Corporate Defendants and Individual Defendants. It is unclear if Rasmussen is the alter ego of all of the Corporate Defendants or just Ballantine. Equally troubling, is Wagon Wheel's allegations, which allege wrongful conduct on behalf of all defendants, but do not indicate what each Individual Defendant did that would justify piercing the corporate veil. For example, Wagon Wheel pleads that defendants intentionally commingled funds. Based on this sweeping allegation, the defendants are unable to decipher what conduct is attributable to each defendant.

Lastly, Wagon Wheel's fourth and seventh claims for relief, which are grounded in fraud,

9

are subject to Rule 9(b)'s heightened requirements. Kearns v. Ford Motor Co., 567 F.3d 1120, 1125-26 (9th Cir. 2009). Wagon Wheel does not satisfy these requirements. Allegations of fraud should specifically include "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007). Wagon Wheel does not include the above listed information required by Swartz. Also, Rule 9(b) "does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." Swartz, 476 F.3d at 764-65. Here, Wagon Wheel lumps Ballantine, David, Eric, Graham, and Rasmussen together and fails to distinguish the defendants' particular roles in the alleged misrepresentations.

Accordingly, Rasmussen's motion to dismiss Wagon Wheel's FAC is granted and Wagon Wheel is given an opportunity to amend the FAC to cure the above-noted deficiencies.

**ORDER**

For the reasons discussed above, IT IS HEREBY ORDERED that:

1. Rasmussen's motion to dismiss Wagon Wheel's FAC against him is GRANTED without prejudice; and
2. Wagon Wheel may file an amended complaint on or by July 30, 2010.

IT IS SO ORDERED.

Dated:   July 16, 2010

_____
CHIEF UNITED STATES DISTRICT JUDGE

10