IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KINGSBURG APPLE PACKERS, INC. d/b/a KINGSBURG ORCHARDS, et al, <br><br> Plaintiffs, <br><br> v. <br><br> BALLANTINE PRODUCE CO., INC., et al., <br><br> Defendants. | Case No.: 1:09-cv-00901 AWI JLT <br><br> FINDINGS AND RECOMMENDATION GRANTING MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT <br><br> (Doc. 178) |

Bank of the West ("Bank") filed a motion for determination of good faith settlement on May 21, 2010. (Doc. 178). Defendants Ballantine Produce Co., Inc.; David Albertson; Eric Albertson; and Jerry DiBuduo filed a notice of opposition to the motion on June 8, 2010 (Doc. 188), which was joined by defendant Virgil Rasmussen on June 7, 2010 (Doc. 189). The matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72-302.

The Court has read and considered the pleadings and arguments of counsel. For the reasons discussed below, the Court recommends that the Bank's motion for determination of good faith settlement be **GRANTED**.

///

///

**I.  Procedural History**

On May 21, 2009, Kingsburg Apple Packers and David Del Curto filed their Complaint against defendants Ballantine Produce, Virgil Rasmussen, David Albertson, Eric Albertson, and Jerry DiBuduo, thereby commencing the action in this Court.  (Doc. 1.)  Plaintiffs' Complaint alleged violations of the Perishable Agricultural Commodities Act ("PACA"), arising under 7 U.S.C. § 499e(c)(2).  *Id.*  Immediately after filing, Plaintiffs sought injunctive relief against the defendants in the form of a temporary restraining order to prevent them from violating PACA provisions and dissipation of assets subject to the PACA trust (Doc. 9).  The Court granted Plaintiffs' motion on May 22, 2009.  (Doc. 15).

The Court issued an Order establishing the procedure for PACA claims on June 16, 2009. (Doc. 28).  To assert a PACA claim, parties had to file a notice of a claim by July 29, 2009.  *Id.* at 10.  Pursuant to the Order, the following parties filed PACA claims:  C&D Comercio y Desarollo International (Doc. 32); Sofruco Alimentos (Docs. 45, 64, 66); Lamanuzzi & Pataleo, LLC (Doc. 49); Kingsburg Apple Packers (Doc. 50); David Del Curto, S.A. (Doc. 51); Giumarra International Marketing (Doc. 52); Agricamex, Ltda (Doc. 54); Delifruit, S.A. (Doc. 57); Gerry Lund (Doc. 58); Wagon Wheel Farms, Inc. (Doc. 59); Exportadora & Servicios Racaray, S.A. (Doc. 61); DiBudio Land Management, Inc. (Doc. 63); Exportadora Agricola Casabindo, Ltda (Doc. 65); Gestion De Exportationes Fruticolas, S.A. (Doc. 67); Southern Fruit, S.A. (Doc. 68); Comercial Greenvic, S.A. (Docs. 69-70); Tuniche Fruits, S.A. (Doc. 73); and Fred Garza, Jr., Inc., doing business as Fruit Harvest (Doc. 79).  After the deadline, on September 29, 2009, Spectrum Produce Distributing filed a "Motion for Leave to Intervene and for Leave to File a PACA Proof of Claim Out of Time" (Doc. 108), which was granted by the Court on February 3, 2010.  (Doc. 144).

The Order establishing the PACA procedure established also that July 29, 2009, was the deadline for parties to file complaints in intervention.  (Doc. 28 at 10).  Several parties filed complaints in intervention against Ballantine Produce, David Albertson, Eric Albertson, Virgil Rasmussen, Jerry DiBuduo, and Babijuice Corporation.  These complaints varied in allegations, but a majority alleged PACA violations and breach of by Ballantine Produce; and fiduciary duty violations, conversion, and unlawful retention of assets by David Albertson, Eric Albertson,

Rasmussen, DiBuduo, and Babijuice Corporation.  In addition, Kingsburg Apple Packers and David Del Curto filed their First Amended Complaint which then included new plaintiffs, Giumarra International Marketing; Agricamex, Ltda; Delifruit, S.A.; Exportadora & Servicios Rucara, S.A., Exportadora Agricola Casabindo, Ltda; Gestion De Exportationes Fruticolas, S.A.; Southern Fruit; and Tuniche Fruit.  (Doc. 74).

On August 12, 2009, the defendants (Ballantine Produce, Virgil Rasmussen, David Albertson, Eric Albertson, Jerry DiBuduo, and Babijuice Corporation of California) filed their answers to the Amended Complaint and complaints in intervention.  (Docs. 88-96).  In addition, these defendants filed a "Third Party Complaint" against John D. Pelton & Associates, John D. Pelton, and Bank of the West.  (Doc. 97).  In the Third Party Complaint, defendants raised claims for equitable indemnity, contribution, and tort of another.  *Id.*  Bank of the West filed its Answer on September 11, 2009.  (Doc. 107).

On May 5, 2010, Bank of the West, and PACA claimants Kingsburg Apple Packers, David Del Curto, Agricamex, Delifruit, Exportadora &Servicios Rucaray, exportadora Agricola casabindo, Southern Fruit, C& D Comerico y Desarollo Internacional, Guimarra International Marketing, Comercial Greenvic, RJO Produce Marketing, Spectrum Produce Distributing (Doc. 175), filed a "Stipulation Instructing and Authorizing the Receiver to Distribute Funds with Respect to PACA Claims" ("Stipulation") and moved the Court to approve the stipulation. (Docs. 176, 182) The Court granted the motion and approved the stipulation on June 28, 2010.  (Doc. 200).

On September 16, 2010, the "Kingsburg Group"[1] filed a stipulation to dismiss claims against the defendants.  (Doc. 220).  In addition, the "Comercial Greenvic Group"[2] filed a stipulation and proposed order for voluntary dismissal of claims against the defendants on September 20, 2010.  (Doc. 223).  Subsequently, the Court issued orders dismissing the claims of the Kingsburg and

---

[1] The "Kingsburg Group" included the original plaintiffs Kingsburg Apple Packers and David Del Curto, along with intervening plaintiffs Giumarra, Agricamex, Delifruit, Exportadora & Services Rucaray, Exportadora Agricola Casabindo, Gestion de Exportaciones Fruiticolas, Southern Fruit, and Tuniche Fruits.  *See* Doc. 222.

[2] The "Comerical Greenvic Group" included intervening plaintiffs Comercial Greenvic, S.A.; C & D Comercico y Desarrollo Internacional; and Sofruco Alimentos, Ltda.  *See* Doc. 224.

Comerical Greenvic Groups against Ballantine Produce, Virgil Rasmussen, David Albertson, Eric Albertson, and Jerry DiBuduo. (Docs. 222, 224).

## II.   Legal Standards for Good Faith Settlement

A motion for good faith settlement arises under the California Code of Civil Procedure 877, which applies to federal court actions and authorizes the Court to determine whether a settlement agreement was entered into good faith. *Spectra-Physics, Inc. V. Chase Manhattan Bank*, 654 F.Supp. 311, 313 (N.D. Cal. 1987); *See Slottow v. American Casualty Co. of Reading, Pennsylvania*, 10 F.3d 1355, 1358-1359 (9th Cir. 1993) (en banc). In relevant part, the California law states,

> Where a release, dismissal with or without prejudice, or covenant not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more other co-obligors mutually subject to contribution rights, it shall have the following effect:
>
> (a) It shall not discharge any such party from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it, whichever is greater.
>
> (b) It shall discharge the party to whom it is given from all liability for any contribution to any other parties.

Cal. Civ. Proc. Code § 877; *see also Rutgard v. Haynes*, 61 F.Supp.2d 1082, 1085 (S.D. Cal. 1999). The objectives of this legislation were "equitable sharing of costs among the parties at fault, and . . . encouragement of settlements." *River Garden Farms, Inc. v. Superior Court*, 26 Cal.App.3d 986, 993 (1972). However, "equitable sharing" does not require *equal* sharing. *Id.*

The California Supreme Court stated, "The good faith provision of section 877 mandates that the courts review agreements purportedly made under its aegis to insure that such settlements appropriately balance the contribution statute's dual objectives." *Tech-Bilt, Inc. v. Woodward-Clyde & Assoc.*, 698 P.2d 159, 163 (Cal. 1985). In the determination of good faith, factors to be considered include,

> a rough approximation of plaintiff's total recovery and the settlor's proportionate liability, the allocation of settlement proceeds among plaintiffs, and a recognition that a settler should pay less in settlement than he would if he were found liable after a trial. Other relevant considerations include the financial conditions and insurance policy limits of settling defendants, as well as the existence of collusion, fraud, or tortuous conduct aimed to injure the interests of nonsettling defendants.

*Id.* at 166 (citation omitted).  The burden of proof lies on a party opposing a motion for good faith settlement to establish a lack of good faith.  *Id.* at 167; *see also* Cal. Civ. Proc. Code §877.6(d).  An opposing party "must demonstrate . . . that the settlement is so far 'out of the ballpark' in relation to these factors as to be inconsistent with the equitable objectives of the statute." *Id.* at 499-500.  The determination as to whether a settlement is made in good faith is a matter of the Court's discretion. *Id.* at 502.

**III.  Discussion and Application**

Bank of the West ("Bank") discusses the above factors in its motion for determination of a good faith settlement.  With regard to proportionate liability, Bank asserts, "Here, there is no evidence that Bank has any liability to PACA Claimants and the Receiver other than in the context of a secured creditor in a dispute as to the priority of Bank's security interest in and the distribution of the 2009 Crop Proceeds."  (Doc. 179 at 8).  The Bank states that there is "uncertainty" regarding the PACA claims of the Chilean companies, given a lack of cases on point.  *Id.* at 8-10.  However, if Bank's position is correct that the Chileans do not have valid PACA claims, Bank would receive $1,000,000 from the 2009 crop proceeds.  *Id.* at 11.  On the other hand, if the Chileans have valid PACA claims, Bank would not receive anything and the Chilean companies would receive $1,000,000.  *Id.*  To settle this dispute, the parties entered in the Stipulation under which Bank will receive approximately 45% of disputed funds ($450,000) and the Chileans receive 55% of the funds.  *Id.*  The PACA claimants will receive additional crop proceeds in the amount of $1,644,367.78.  *Id.*  According to Bank, "the settlement represents a reasonable settlement value" because "it is likely that neither the PACA Claimants nor the Bank will recover more than the amounts distributed under the Stipulation" if the case were to proceed to trial.  *Id.*  Also, Bank asserts insurance policy limits were not a factor in the settlement because the claims of PACA claimants were well below the policy limits.  *Id.*  Finally, Bank argues that there was no fraud or collusion in reaching the settlement.  *Id.* at 12.

The opposing parties Ballantine Produce, David Albertson, Eric Albertson and Jerry DiBuduo ("Opposing Parties") argue that "[t]he settlement does nothing more than provide the Bank with funds it had the potential to recover against the Chilean Group . . . which was a part of a

separate contested issue in this case regarding whether or not the Chilean Group had valid PACA Trust claims." Doc. 191 at 1-2. In addition, the Opposing Parties argue that the settlement is a compromise only as to the issue regarding the Chilean companies' PACA claims, and not a payment of any amount regarding the other complaints filed by Kingsburg Apple Packers and intervenor plaintiffs, which include causes of action against Opposing Parties for breach of fiduciary duty, fraud, false and misleading statements, and conversion. *Id.* at 2.

Virgil Rasmussen, who joined the Opposing Parties, argues that Bank is seeking to evade the consequences of PACA and that the settlement "leaves the PACA claimant parties short." (Doc. 189 at 2-3). Rasmussen argues against the settlement also because "this proposed settlement leaves Rasmussen, who has no exposure whatsoever to the Bank, exposed on PACA claims. But for the settlement, the PACA claims would be paid in full. The PACA claimants have sued Rasmussen personally for amounts claimed to be due but Bank has not." *Id.* at 3. Rasmussen maintains that the PACA growers should have their claims satisfied before Bank receives any reimbursement which is consistent with the statutory requirements of PACA. *Id.*

Notably, on June 16, 2009, the Court issued an order, pursuant to a stipulation, establishing the PACA procedures which specifically provided that Bank would be repaid funds it advanced to the Receiver and that the "<u>Bank's right to the repayment of those funds is senior</u> to any rights of Plaintiffs or any other holder of a PACA trust claim against Ballantine." (Doc. 28 at 4, emphasis added) Despite this alteration in the typical priority assigned to PACA claimants, the opposing parties here did not object to this term.[3]

In any event, it appears that the primary concern of the opposing parties, is that the settlement, which was ordered into effect (after this motion) on June 28, 2010 (Doc. 200), did not address the claims raised by the PACA claimants against them. However, since that time, the PACA claimants have dismissed their claims against Ballantine Produce, David Albertson, Eric Albertson, Jerry DiBuduo, and Virgil Rasmussen. (Docs. 220, 222-24). Therefore, if this was ever a valid basis

---

[3] Though not individual signatories to the stipulation upon which the Court's order was based, each of the objecting parties here were represented by Steven Paganetti, who signed the document on their behalf thereby stipulating to the terms of the order.

for objecting to the settlement, it appears that it is valid no longer.

*Tech-Bilt* instructs that, one of the most important factors is the proportion of liability and where "there is no substantial evidence to support a critical assumption as to the nature and extent of a settling defendant's liability, then determination of good faith upon such assumption is an abuse of discretion." *Toyota Motor Sales U.S.A., Inc. v. Superior Court*, 220 Cal.App.3d 864, 871 (1990); *see also City of Grand Terrace v. Superior Court*, 192 Cal.App.3d 1251, 1262 (1987).  A "settlement figure must not be grossly disproportionate to what a reasonable person, at the time of the settlement, would estimate the . . . liability to be." *Torres v. Union Pacific R. Co.*, 157 Cal.App.3d 499, 509 (1984).  Bank asserts that there is no evidence that it is liable to the PACA claimants and the Opposing Parties have not pointed to any.

In addition, it appears that the settlement allocation resolves the dispute between Bank and the Chileans as to the proceeds of the 2009 crop proceeds and resolves the claims of the other PACA claimants.  *Tech-Bilt, Inc.*, 698 P.2d at 163. The fact that PACA claimants may receive less than the total of their claim, does not militate against a finding of good faith settlement. *Id*.(In settlement, there is a "recognition that a settler should pay less in settlement than he would if he were found liable after a trial . . .")  Also, as Bank asserts, it appears the financial conditions and insurance policy limits of the settling parties were not at issue in the settlement process.  *Id*. Finally, there does not appear to be any evidence of collusion, fraud, or tortuous conduct aimed at injuring the interests of the Opposing Parties. *Id.*

### IV.  Findings and Recommendations

The *Tech-Bilt* factors weigh in favor of granting Bank's motion for good faith settlement.  Most notably, the primary concern expressed by the opposing parties, that the settlement does not protect them from the PACA claimants seeking additional compensation from them, seems to have lost its persuasive power (if, indeed, it ever had any) given that the PACA claimants have dismissed their claims against Ballantine Produce, David Albertson, Eric Albertson, Jerry DiBuduo, and Virgil Rasmussen.  In addition, the opposing parties have not met their burden of establishing that the settling amounts are inconsistent with the equitable objectives of the California legislation.

Given the issues discussed above, and the objectives of California legislation for "equitable

1 sharing of costs among the parties at fault, and . . . encouragement of settlements," the Court acts
2 within its discretion in granting the Bank's motion for good faith settlement. *See Tech-Bilt*, 698 P.2d
3 at 502. Therefore, the Court **RECOMMENDS** that Bank's motion for the determination of good
4 faith settlement be **GRANTED**.

5      These Findings and Recommendations are submitted to the United States District Judge
6 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the
7 Local Rules of Practice for the United States District Court, Eastern District of California.  Within
8 14 days after being served with these Findings and Recommendations, any party may file
9 written objections with the court.  Such a document should be captioned "Objections to Magistrate
10 Judge's Findings and Recommendations."  Responses to objections shall be filed and served within
11 14 days after service of the objections.  The parties are advised that failure to file objections within
12 the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951
13 F.2d 1153 (9th Cir. 1991).

15 IT IS SO ORDERED.
16 Dated:   **December 6, 2010**                              /s/ Jennifer L. Thurston
                                                                              UNITED STATES MAGISTRATE JUDGE