**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KINGSBURG APPLE PACKERS INC. )<br>D/B/A KINGSBURG ORCHARDS, et. al. )<br>                                                          )<br>                          Plaintiffs,            )<br>                                                          )<br>         v.                                              )<br>                                                          )<br>BALLANTINE PRODUCE Co., Inc., et. al., )<br>                                                          )<br>                          Defendants.        )<br>_____ )<br>WAGON WHEEL FARMS, INC., a      )<br>California corporation,                          )<br>                                                          )<br>                          Intervenor Plaintiff, )<br>                                                          )<br>         v.                                              )<br>                                                          )<br>BALLANTINE PRODUCE CO., Inc. et. al. )<br>                                                          )<br>                          Defendants.        )<br>_____ ) | NO. 1:09-CV-901-AWI-JLT<br><br>ORDER DENYING BANK OF THE<br>WEST'S MOTION TO DISMISS<br>WAGON WHEEL FARM, INC.'S<br>THIRD-AMENDED COMPLAINT<br><br>(Doc. No. 208) |

   This case comes before the Court on Defendant Bank of the West's ("Bank") motion to dismiss plaintiff intervenor Wagon Wheel Farms, Inc.'s ("Wagon Wheel") claims brought under the Perishable Agricultural Commodities Act ("PACA") and related state claims against various defendants. For the reasons that follow, the motion to dismiss will be denied.

///

///

///

# FACTUAL HISTORY[1]

Wagon Wheel alleges that in 2008, it entered into an oral contract ("Agreement") with Ballantine Produce Co. ("Ballantine"), whereby Ballantine was to be the "exclusive Commission Merchant and sales broker for all of Wagon Wheel's fruit produced during the 2008-2009 season harvest..." See Third-Amended Complaint ("TAC") ¶ 24. Wagon Wheel alleges that under the Agreement, it retained title to all of the tree fruit delivered to Ballantine and that Ballantine did not possess title to the fruit. Id. Throughout the 2008-2009 harvest season, Wagon Wheel performed all conditions, covenants, and promises required of it under the Agreement by delivering marketable fruit to Ballantine for packing and marketing. See TAC ¶ 26. As of April 2009, Wagon Wheel had delivered fruit to Ballantine worth $1,048,727.52, but Ballantine had only paid Wagon Wheel $30,421.30, leaving a balance owing to Wagon Wheel of $1,018,306.22. See TAC ¶ 27. Wagon Wheel alleges that Ballantine used the proceeds received from Wagon Wheel's fruits ("Proceeds") for its own uses, including paying off certain creditors, like Bank. See TAC ¶ 29. Wagon Wheel alleges that Bank knew or should have known that Ballantine had misappropriated Wagon Wheel's money and was using the misappropriated funds to pay Bank. See TAC ¶ 51. Wagon Wheel contends that Bank knew that Wagon Wheel, as the grower, kept title to its fruit and the Proceeds. See TAC ¶ 51. Wagon Wheel asserts that Bank currently possesses and is wrongfully retaining the sum of $1,018,306.22 (plus interest), which was derived directly from the sale of Wagon Wheel's titled fruit. See TAC ¶ 55.

## PROCEDURAL BACKGROUND

On October 29, 2009, Wagon Wheel filed a motion to determine the validity of its PACA claims. On February 9, 2010, the Court found that Wagon Wheel did not have a valid PACA claim because it had failed to preserve its trust assets. On February 5, 2010, Wagon Wheel filed a first-amended complaint in intervention ("FAC"). On July 6, 2010, the Court granted Bank's

---

[1] The factual history is provided for background only and does not form the basis of the court's decision; the assertions contained herein are not necessarily taken as adjudged to be true. The legally relevant facts relied upon by the court are discussed within the analysis.

motion to dismiss Wagon Wheel's FAC.  See Doc. No. 201.

On July 20, 2010, Wagon Wheel filed a second-amended complaint.  On July 30, 2010, Wagon Wheel filed its TAC.  Wagon Wheel's TAC alleges the following claims for relief:  (1) Breach of Commission Merchant Contract against Defendant Ballantine, and against alter ego defendants David Albertson ("David A."), Eric Albertson ("Eric A."), Richard Graham ("Graham"), and Virgil Rasmussen ("Rasmussen");[2]  (3) Violation of PACA, 7 U.S.C. § 499b(4) - Failure to Account and Pay Promptly against defendants Ballantine, David A., Eric A., Graham, and Rasmussen; (4) Violation of PACA, 7 U.S.C. § 499b(4) - False and Misleading Statement Relating to a PACA transaction against defendants Ballantine and David; (5) Breach of Fiduciary Duty against defendants Ballantine, David, Eric, Graham, and Rasmussen; (6) Conversion of Plaintiff's Sales Proceeds against defendants Ballantine, David A., Eric A., Graham, Rasmussen, and Bank; (7) Constructive Fraud against defendants Ballantine, David A., Eric A., Graham, and Rasmussen; (8) Constructive Trust and Accounting against all defendants; and (9) Quantum Meruit (i.e. Restitution of the Misappropriated Funds) against defendants Redwood Farms and Babijuice.

Bank now moves to dismiss Wagon Wheel's sixth and eighth claims for relief for failure to state a claim.  See Doc. No. 208.  Wagon Wheel filed an opposition.  See Doc. No. 213.  Bank filed a reply.  See Doc. No. 218.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory.  Johnson v. Riverside

---

[2] Wagon Wheel notes in its TAC that its second claim for relief -Enforcement of PACA Trust, 7 U.S.C. §499 (e)(c)(4) has been dismissed as to all Defendants by the Court's February 9, 2010 Order.  See Doc. No. 147.

3

Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008); Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Marceau v. Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008); Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1999). The Court must also assume that general allegations embrace the necessary, specific facts to support the claim. Smith v. Pacific Prop. and Dev. Corp., 358 F.3d 1097, 1106 (9th Cir. 2004); Peloza v. Capistrano Unified Sch. Dist., 37 F.3d 517, 521 (9th Cir. 1994). But, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1056-57 (9th Cir. 2008); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). Although they may provide the framework of a complaint, legal conclusions are not accepted as true and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009); see also Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003). Furthermore, Courts will not assume that plaintiffs "can prove facts which [they have] not alleged, or that the defendants have violated . . . laws in ways that have not been alleged." Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court has recently explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Thus, to "avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 129 S. Ct. at 1949; see Twombly, 550 U.S. at 570; see also Weber v. Department of Veterans Affairs, 521 F.3d 1061, 1065 (9th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court draw the

4

reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949.

> The plausibility standard is not akin to a 'probability requirement,' but it asks more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'
> . . .
> Determining whether a complaint states a plausible claim for relief will . . . be a context specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief.

Iqbal, 129 S. Ct. at 1949-50. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. United States Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

## DISCUSSION

### I.    Sixth Claim for Relief - Conversion

Bank's Argument

Bank argues that Wagon Wheel's conversion allegations in the TAC should be stricken because they are contradictory to the allegations in the FAC. Bank argues that the TAC conversion allegations are contradictory because in the FAC, Wagon Wheel based it conversion claim on the fact that it had a California Producer's Lien and therefore had a superior claim to the Proceeds; whereas in the TAC, Wagon Wheel bases it claim on the fact that Ballantine never held title to Plaintiff's fruit and therefore the Proceeds were never subject to any of the liens or other claims made by Bank.

Bank argues that notwithstanding the contradictory allegations, it cannot be liable for conversion because its possession of the proceeds received from Ballantine was not wrongful. Bank argues that its possession was not wrongful for three reasons: (1) Bank had a perfected

security interest in the Proceeds pursuant to a credit and security agreement, which was executed by Ballantine and Bank. Bank contends that by virtue of its security interest in the Proceeds it had the right to possession before any other creditor; (2) Bank's receipt of the Proceeds was ordered by the Court's June 16, 2009 Order; and (3) Wagon Wheel admitted that Ballantine owed Bank money.

Wagon Wheel's Argument

Wagon Wheel argues that the factual allegations in the FAC and TAC are not contradictory and that its conversion claim as pled in the TAC is based on an alternative legal theory. Wagon Wheel contends that it has adequately pled its conversion claim because it has alleged that it had the right to ownership of the Proceeds and Bank's possession of the Proceeds was improper. Wagon Wheel asserts that Bank's purported security interest could not have attached to the Proceeds because they were never Ballantine's property. Wagon Wheel argues that the Court's June 16, 2009 Order never ordered Ballantine to pay Bank with the Proceeds.[3]

---

[3] In opposition, Wagon Wheel states that "to the extent Bank may argue that its security interest in Ballantine's property (if it has any) attached to consigned products in the possession of Ballantine, the argument is without merit." Wagon Wheel contends that under the UCC and California law, if a creditor with a perfected security interest in the inventory of a business has actual knowledge that the business is substantially engaged in selling good of others on a consignment basis, that creditor has no claim to the consigned goods or its derivative proceeds. Wagon Wheel alleges that Bank had actual knowledge that the fruit Ballantine accepted from Wagon Wheel was on a commission merchant/consignment basis. See Opposition at 5-7. In reply, Bank argues that Wagon Wheel is estopped from asserting Bank's actual knowledge because the Court's July 18, 2009 Order proclaims that "Bank would have a priority security interest in the proceeds of BALLANTINE's crop and the PACA assets." See Reply at 5-6.

It is not necessary for the Court to address this argument as the issue has not been adequately briefed pursuant to Local Rule 230. However, if the parties wish to explore this issue at a later stage, the Court notes that it's initial research indicates that allegations of actual knowledge are sufficient to state a claim. See Fariba v. Dealer Services Corp, 178 Cal. App. 4th 156, 166-170 (2009).

Moreover, the Court notes that the Court's June 18, 2009 Order does not proclaim as Bank asserts that "Bank would have a priority security interest in the proceeds of BALLANTINE's crop *and the PACA assets*." The June 18, 2009 Order, however, does contain a paragraph regarding Bank's repayment of funds that reads as follows: "Bank is willing to advance funds to the Receiver for the purpose of cultivating, maintaining, preserving, caring for and harvesting the Crops and collecting and accounting for the proceeds thereof, only if Bank's right to the repayment of those funds is senior to any rights of Plaintiffs or any other holder of a PACA trust claim against Ballantine (collectively, "PACA Claimants") with respect to the Crops and the proceeds thereof. See Doc. No. 28 at 4, Paragraph S.

6

Resolution

A.      Bank's Request to Strike the TAC's Conversion Allegations

Bank argues that the TAC allegations are contradictory from the FAC allegations and should be stricken as false and sham allegations. Bank relies on Bradley v. Chiron Corp., 136 F.3d 1317, 1324 (Fed. Cir. 1998) to support its position.

The Court is not persuaded by Bank's argument for several reasons. First, the Ninth Circuit "allow[s] pleadings in the alternative-even if the alternatives are mutually exclusive." See PAE Gov. Services, Inc., v. MPRI, Inc., 514 F.3d 856, 859 (9th Cir. 2007); see also Fed. R. Civ. P. 8(d)(3) ("a party may state as many separate claims or defenses as it has, regardless of consistency.") A district court has no "free-standing authority to strike pleadings simply because it believes that a party has taken inconsistent positions in the litigation." See PAE, 514 F.3d 856 at 859. As the Ninth Circuit explained in PAE:

> The short of it is that there is nothing in the Federal Rules of Civil Procedure to prevent a party from filing successive pleadings that make inconsistent or even contradictory allegations. Unless there is a showing that the party acted in bad faith-a showing that can only be made after the party is given an opportunity to respond under the procedures of Rule 11-inconsistent allegations are simply not a basis for striking a pleading.

PAE, 514 F.3d at 860. Here, Bank has not raised any allegations of bad faith. Moreover, while the PAE court acknowledged that Bradley reached a contrary conclusion to that of the PAE court, the Ninth Circuit expressly declined to follow Bradley. See PAE, 514 F.3d at 859.

Second, even assuming arguendo that the Rules did not permit contradictory allegations, Wagon Wheel's conversion allegations in the TAC are not contradictory to its previous allegations in the FAC. Wagon Wheel's FAC conversion claim was based on the allegation that it had a California Producer's Lien on the Proceeds, and therefore to the extent that Bank had possession of the Proceeds, the Bank was liable for conversion. See FAC ¶¶ 52-53. Wagon Wheel's conversion claim in the TAC is based on the allegations that it consigned its fruit to Ballantine, and that Ballantine as a "commission merchant" never took title to the fruit or the Proceeds. Thus, the Proceeds were not subject to the Bank's liens or other claims the Bank may

have had on property and/or inventory owned by Ballantine.  See TAC ¶¶ 51-54.  Wagon Wheel's conversion allegations in the TAC are not contradictory to any allegations in the FAC but rather are alternative legal theories.  Wagon Wheel has consistently alleged that Ballantine was to be the exclusive commission merchant and sales broker for all of Wagon Wheel's fruit.  See FAC 17.

Additionally, on July 6, 2010, the Court dismissed Wagon Wheel's California Producer's Lien claim with leave to amend so that Wagon Wheel could make factual allegations that Ballantine qualified as a "Processor" as defined by the California Food & Agriculture Code.  See Doc. No. 201.  Wagon Wheel asserts that it withdrew its California Producer's Lien allegations in the TAC because the facts currently known to it indicate that Ballantine might not qualify as a "Processor."  See Opposition at 2-3.  Abandoning claims after discovering that they may be factually unsupported does not mean that those allegations were brought in bad faith or that the pleading was a sham.  As the Ninth Circuit has stated:  "Parties usually abandon claims because, over the passage of time and through diligent work, they have learned more about the available evidence and viable legal theories, and wish to shape their allegations to conform to these newly discovered realities.  We do not call this process sham pleading; we call it litigation."  See PAE, 514 F.3d 856 at 859.

Accordingly, Bank's request to strike Wagon Wheel's TAC allegations is denied.

B.    Bank's Argument that its Possession of the Proceeds from Ballantine was Proper

In a conversion action, a plaintiff has to allege the following: (1) that it had ownership or a right to possession of the property at the time of the conversion; (2) the defendant's conversion by wrongful act or disposition of property rights; and (3) damages.  Oakdale Village Group v. Fong, 43 Cal.App. 4th 539, 543-44 (1996).  Bank argues that Wagon Wheel's conversion claim fails because Bank's possession of the Proceeds was proper.  Bank advances three arguments.

1.    Bank's Possession of the Proceeds Pursuant to a Security Agreement

Bank argues that its possession of the Proceeds was not wrongful because Bank had a

perfected security interest in the Proceeds received by Ballantine pursuant to a credit and security agreement ("Security Agreement") dated April 30, 2008, which was executed by Ballantine and Bank. Bank notes that portions of the Security Agreement are referenced in the Court's June 18, 2009 Order entitled "Consent Injunction and Order Establishing PACA Claims Procedure..." See Doc. No. 28.

In deciding whether to dismiss a claim under Rule 12(b)(6), the Court is generally limited to reviewing only the complaint, but may review materials which are properly submitted as part of the complaint and may take judicial notice of public records outside the pleadings. See Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001); Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996); MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986). Further, under the "incorporation by reference" doctrine, courts may review documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005); Lapidus v. Hecht, 232 F.3d 679, 682 (9th Cir. 2000). Here, the Security Agreement is outside the four corners of the complaint and is not referenced in the complaint. Accordingly, the Court will not consider any portions of the Security Agreement that are referenced in the Court's June 18, 2009 Order in deciding this Rule 12(b)(6) motion.

    2.    <u>Bank's Possession of the Proceeds Pursuant to the Court's June 18, 2009 Order</u>[4]

Bank argues that its possession of the Proceeds was not wrongful because "receipt of any alleged monies from Ballantine was pursuant to [the Court's June 18, 2009 Order]." See Motion to Dismiss at 9. Bank cites to the following paragraphs from the Court's June 18, 2009 Order in support of its argument[5]:

---

[4] The June 18, 2009 Order is entitled "Consent Injunction and Order Establishing PACA Claims Procedure" entered into by the Kingsburg Plaintiffs and Defendants Ballantine, Rasmussen, Eric, David, and DiBuduo. See Doc. No. 28.

[5] Facts subject to judicial notice may be considered by a court on a motion to dismiss. In re Russell, 76 F.3d 242, 244 (9th Cir.1996); Mullis v. United States Bankruptcy Court, 828 F.2d 1385, 1388 (9th Cir. 1987). The court may take judicial notice of facts that are capable of

9

| | | |
|---|---|---|
| | Q: | ...Receiver was appointed to take possession of certain real property collateral and all of the personal property collateral of Ballantine which secures Bank's loans to Ballantine, including without limitation, all currently growing crops and farm products ("Crops"). |
| | R. | Plaintiffs and Bank agree that funds have to be expended by the Receiver to cultivate, maintain, care for, preserve, and harvest the Crops and collect and account for the proceeds thereof. |
| | S. | Bank is willing to advance funds to the Receiver for the purpose of cultivating, maintaining, preserving, caring for and harvesting the Crops and collecting and accounting for the proceeds thereof, **only if Bank's right to the repayment of those funds is senior to any rights of Plaintiffs or any other holder of a PACA trust claim against Ballantine** (collectively, "PACA Claimants") with respect to the Crops and the proceeds thereof. |
| | 11. | Notwithstanding anything in this Order to the contrary, the Receiver shall, from the proceeds of the Crops, **first pay (a) all amounts advanced by the Bank to the Receiver, whether prior to or after entry of this Order,** for the purpose of cultivating, maintaining, preserving, and caring for and harvesting the Crops and collecting and accounting for the proceeds thereof. |

See Motion to Dismiss at 8-9. (emphasis in original).

Bank has not met its burden to show that the above cited paragraphs, on their face, provide that Bank is entitled to possession of the Proceeds at issue (i.e. the proceeds that derive from the tree fruit that Wagon Wheel delivered to Ballantine in the Summer of 2008.) Paragraph Q states in relevant part, that a receiver is to take possession of certain real estate collateral and all of the personal property collateral of Ballantine, including without limitation, *all currently growing crops and farm products ("Crops")*. See Doc. No. 28 at 4. (emphasis added). Paragraph S provides in relevant part, that Bank is *willing to advance funds* to the receiver to grow and harvest the Crops if the Bank's right to repayment of *those funds* is senior to all other claimants *with respect to the Crops and the proceeds thereof.* Id. (emphasis added). Paragraph

---

accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); United States v. Bernal-Obeso, 989 F.2d 331, 333 (9th Cir. 1993). Judicial notice may be taken of court records. See, e.g., Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989); Mullis v. United States Bank. Ct., 828 F.2d 1385, 1388 n.9 (9th Cir. 1987). The Court takes judicial notice of the Court's June 18, 2009 Order (Doc. No. 28).

11 provides in relevant part, that Receiver shall, *from the proceeds of the Crops*, first pay (a) *all amounts advanced by the Bank to the Receiver*, whether prior to or after entry of this Order, for the purpose of cultivating, maintaining, preserving, and caring for and harvesting the Crops. Id. (emphasis added).

Paragraphs S and 11 only reference and discuss Bank's right to repayment with respect to the funds that Bank advanced to the receiver for the purpose of cultivating and harvesting the "Crops." Bank has not shown that the above cited paragraphs indicate that Bank has a right to repayment from the Proceeds (i.e. the funds that were derived from the goods that were delivered to Ballantine by Wagon Wheel in the Summer of 2008). Wagon Wheel alleges that Ballantine, as its commission merchant, never took title to the fruit, or the Proceeds. See TAC at ¶¶51-55. Wagon Wheel alleges that it retained title to the fruit it cosigned to Ballantine. Id.

Accordingly, the Court's June 18, 2009 Order does not support the Bank's position regarding the propriety of its possession of the Proceeds.

      3.      Bank's Possession Based on Wagon Wheel's Allegation that Ballantine Owed Bank Money

Bank argues that its possession of the Proceeds was proper because Wagon Wheel admitted that Ballantine owed Bank money. See Motion to Dismiss at 7. Assuming arguendo that Wagon Wheel alleged that Ballantine owed Bank money, Bank does not cite to any authority for the proposition that because Bank is owed money from Ballantine, it is proper for Bank to retain the proceeds from the sale of fruit that Wagon Wheel delivered to Ballantine, as its commission merchant on a consignment basis. Therefore, Bank's argument is without merit.

     **II.**     **Eighth Claim for Relief - Constructive Trust**

Bank's Argument

Bank asserts that Wagon Wheel's constructive trust claim should be dismissed because the claim is dependent upon a successful conversion claim and here the conversion claim fails.

Wagon Wheel's Argument

Wagon Wheel argues that it is entitled to a constructive trust because Bank is liable in

11

conversion for possession and retention of funds converted by Ballantine.

<u>Resolution</u>

A constructive trust claim is a remedy for a valid conversion claim. <u>Burlesci v. Petersen</u>, 68 Cal. App. 4th 1062, 1069 (1998). Because Wagon Wheel has alleged a valid conversion claim, Wagon Wheel's constructive claim remains viable. Accordingly, Bank's motion to dismiss Wagon Wheel's eighth claim is denied.

## **ORDER**

For the reasons discussed above, the Court orders that:

1. Bank's motion to dismiss Wagon Wheel's Sixth claim against it is DENIED; and
2. Bank's motion to dismiss Wagon Wheel's Eighth Claim against it is DENIED.

IT IS SO ORDERED.

Dated:  February 8, 2011

_____
CHIEF UNITED STATES DISTRICT JUDGE