**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KINGSBURG APPLE PACKERS, INC. <br> D/B/A KINGSBURG ORCHARDS, et. al. <br><br> Plaintiffs, <br><br> v. <br><br> BALLANTINE PRODUCE CO., INC., <br> et. al., <br><br> Defendants. <br> _____ <br> WAGON WHEEL FARMS, INC., a <br> California corporation, <br><br> Intervenor Plaintiff, <br><br> v. <br><br> BALLANTINE PRODUCE CO., INC. <br> et. al. <br><br> Defendants. <br> _____ | NO. 1:09-CV-901-AWI-JLT <br><br> ORDER DENYING IN PART AND <br> GRANTING IN PART DEFENDANT <br> VIRGIL RASMUSSEN'S MOTION <br> TO DISMISS <br><br> (Doc. No. 210) |

This case comes before the Court on Defendant Virgil Rasmussen's ("Rasmussen") motion to dismiss plaintiff intervenor Wagon Wheel Farms, Inc.'s ("Wagon Wheel") claims brought under the Perishable Agricultural Commodities Act ("PACA") and related state claims against various defendants. For the reasons that follow, the motion to dismiss will be denied in part and granted in part.

# FACTUAL HISTORY[1]

Wagon Wheel alleges that in 2008, it entered into an oral contract ("Agreement") with Ballantine Produce Co. ("Ballantine"), whereby Ballantine was to be the "exclusive Commission Merchant and sales broker for all of Wagon Wheel's fruit produced during the 2008-2009 season harvest..." See Third-Amended Complaint ("TAC") ¶ 24.  Wagon Wheel alleges that under the Agreement, it retained title to all of the tree fruit delivered to Ballantine and that Ballantine did not possess title to the fruit. Id. Throughout the 2008-2009 harvest season, Wagon Wheel performed all conditions, covenants, and promises required of it under the Agreement by delivering marketable fruit to Ballantine for packing and marketing. See TAC ¶ 26.  As of April 2009, Wagon Wheel had delivered fruit to Ballantine worth $1,048,727.52, but Ballantine had only paid Wagon Wheel $30,421.30, leaving a balance owing to Wagon Wheel of $1,018,306.22. See TAC ¶ 27.  Wagon Wheel alleges that Ballantine used the proceeds received from Wagon Wheel's fruits for its own uses, including paying off certain creditors, like Bank of the West ("Bank"). See TAC ¶ 29.

### Wagon Wheel's Alter Ego Allegations

Wagon Wheel alleges that Rasmussen abused Ballantine's corporate form and seeks to hold him personally liable for Ballantine's torts and other liabilities under an alter ego theory of liability.  Wagon Wheel alleges that Rasmussen was the alter ego of Ballantine. See TAC ¶ 24. Wagon Wheel alleges that Rasmussen was a principal investor, manager, and president of Ballantine, owned stock in Ballantine, and was a "responsible managing officer" of Ballantine and of its Commission Merchant license. See TAC ¶¶ 10, 12.  Rasmussen and the other individual defendants solely ran, operated, and completely controlled Ballantine. See TAC ¶ 13.

Rasmussen knew that Ballantine was financially unable to do business as a licensed Commission Merchant. Id. Rasmussen knowingly encouraged Wagon Wheel to deliver its

---

[1] The factual history is provided for background only and does not form the basis of the court's decision; the assertions contained herein are not necessarily taken as adjudged to be true. The legally relevant facts relied upon by the court are discussed within the analysis.

Summer 2008 harvested fruit to Ballantine, who was financially broke and under-capitalized. See TAC ¶ 13. When Ballantine took delivery of Wagon Wheel's fruit, sold the fruit, and then collected the sales proceeds, Ballantine was completely under-capitalized. See TAC ¶ 13. Rasmussen, as president and signor of Ballantine's checks, knew Ballantine had no capital to handle fruit as a Commission Merchant. Rasmussen knew Ballantine did not own title to Wagon Wheel's fruit or fruit's proceeds. See TAC ¶ 13. Rasmussen knew that Ballantine was not treating Wagon Wheel's sales proceeds separately as a fiduciary account. Id. Rasmussen knew that Bank was on the verge of cutting of Ballantine's line of credit to run the Ballantine Packinghouse. Id. Rasmussen knew that Ballantine's workers and janitors had not been paid for months. Id.

Rasmussen and other individual defendants directed the commingling of Wagon Wheel's $1,300,000.00 of grower/consigner funds with Ballantine's funds. See TAC ¶ 12. The commingled funds were used to pay individual defendant's expenses. See TAC ¶ 12. Rasmussen knew that Ballantine did not own title to Wagon Wheel's fruit proceeds and Rasmussen, as president, wrote checks to benefit himself and other defendants from these proceeds. See TAC ¶¶ 13, 14. The individual defendants personally guaranteed millions of dollars of equipment purchases and leases to be used by Ballantine due to Ballantine's financial problems. See TAC ¶ 12.

**PROCEDURAL BACKGROUND**

On October 28, 2009, Wagon Wheel filed a motion to determine the validity of its PACA claims. See Doc. No. 117. On February 9, 2010, the Court found that Wagon Wheel did not have a valid PACA claim because it had failed to preserve its trust assets. On February 5, 2010, Wagon Wheel filed a first-amended complaint in intervention ("FAC"). See Doc. No. 146. On July 6, 2010, the Court granted Bank's motion to dismiss Wagon Wheel's FAC. See Doc. No. 201.

On July 20, 2010, Wagon Wheel filed a second-amended complaint. On July 30, 2010,

3

Wagon Wheel filed its TAC.  Wagon Wheel's TAC alleges the following claims for relief:  (1) Breach of Commission Merchant Contract against Defendant Ballantine, and against alter ego defendants David Albertson ("David A."), Eric Albertson ("Eric A."), Richard Graham ("Graham"), and Virgil Rasmussen ("Rasmussen");[2]  (3) Violation of PACA, 7 U.S.C. § 499b(4) - Failure to Account and Pay Promptly against defendants Ballantine, David A., Eric A., Graham, and Rasmussen; (4) Violation of PACA, 7 U.S.C. § 499b(4) - False and Misleading Statement Relating to a PACA transaction against defendants Ballantine and David; (5) Breach of Fiduciary Duty against defendants Ballantine, David A., Eric A., Graham, and Rasmussen; (6) Conversion of Plaintiff's Sales Proceeds against defendants Ballantine, David A., Eric A., Graham, Rasmussen, and Bank; (7) Constructive Fraud against defendants Ballantine, David A., Eric A., Graham, and Rasmussen; (8) Constructive Trust and Accounting against all defendants; and (9) Quantum Meruit (i.e. Restitution of the Misappropriated Funds) against defendants Redwood Farms and Babijuice.

Rasmussen now moves to dismiss Wagon Wheel's First, Third, Fifth, Sixth, and Seventh, claims for relief for failure to state a claim.  On September 3, 2010, Wagon Wheel filed an opposition.  On September 13, 2010, Rasmussen filed a reply.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory.  Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008); Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken

---

[2] Wagon Wheel notes in its TAC that its second claim for relief -Enforcement of PACA Trust, 7 U.S.C. §499 (e)(c)(4) has been dismissed as to all defendants by the Court's February 9, 2010 Order.  See Doc. No. 147.

4

as true and construed in the light most favorable to the non-moving party. Marceau v. Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008); Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1999). The Court must also assume that general allegations embrace the necessary, specific facts to support the claim. Smith v. Pacific Prop. and Dev. Corp., 358 F.3d 1097, 1106 (9th Cir. 2004); Peloza v. Capistrano Unified Sch. Dist., 37 F.3d 517, 521 (9th Cir. 1994). But, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1056-57 (9th Cir. 2008); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). Although they may provide the framework of a complaint, legal conclusions are not accepted as true and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009); see also Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003). Furthermore, Courts will not assume that plaintiffs "can prove facts which [they have] not alleged, or that the defendants have violated . . . laws in ways that have not been alleged." Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court has explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Thus, to "avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 129 S. Ct. at 1949; see Twombly, 550 U.S. at 570; see also Weber v. Department of Veterans Affairs, 521 F.3d 1061, 1065 (9th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949.

      The plausibility standard is not akin to a 'probability requirement,' but it asks more

5

> than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'
> . . .
> Determining whether a complaint states a plausible claim for relief will . . . be a context specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief.

Iqbal, 129 S. Ct. at 1949-50. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. United States Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

## DISCUSSION

I.  First Claim for Relief -Breach of Commission Merchant Contract based on Alter Ego Theory of Liability

Rasmussen's Argument

Rasmussen argues that Wagon Wheel's allegations do not support an alter ego theory of liability because it merely recites elements of the alter ego doctrine without a factual basis. Rasmussen namely argues that Wagon Wheel fails to allege what it is that each defendant did that would justify piercing the corporate veil. Rasmussen contends that the undercapitalization factor must be established as of the time the entity was formed. Rasmussen asserts that Wagon Wheel fails to allege how any alleged commingling of funds within Ballantine involves any of the individual defendants.

Wagon Wheel's Argument

Wagon Wheel argues that its alter ego allegations are sufficient because it alleges that Rasmussen was the alter ego of Ballantine, was the president of Ballantine, had knowledge of Ballantine's undercapitalization, commingled funds, knew that Ballantine was not treating Wagon Wheel's grower funds separately from Ballantine's money, used Wagon Wheel's grower funds to pay himself and to pay his personally guaranteed debt to Bank and other lenders. See Wagon

6

Wheel's Opposition at 3.

Resolution

Wagon Wheel asserts that Rasmussen was an alter ego of Ballantine. The Court finds that the TAC's allegations are sufficient to plead an alter ego relationship as to Rasmussen and Ballantine.

In order for the acts of a corporation to be legally recognized as being controlled by an individual person, California law requires:

> First, that the corporation is not only influenced and governed by that person, but that there is such a unity of interest and ownership that the individuality, or separateness of the said person and corporation has ceased; [and] second, that the factors are such that an adherence to the fiction of the separate existence of the corporation, would under the particular circumstances, sanction a fraud or promote injustice.

Firstmark Capital Corp. v. Hempel Financial Corp., 859 F.2d 92, 94 (9th Cir. 1988) (citing Wood v. Elling Corp., 20 Cal. 3d 353 (1977)). The factors to be considered in determining whether the alter ego doctrine applies include, the commingling of funds and other assets, the individual holding himself out as liable for the debts of the corporation, ownership and control of the corporation by the individual, inadequate capitalization, disregard of corporate formalities, lack of segregation of corporate records, and failure to segregate the funds of the separate entities. See Sonora Diamond Corp. v. Superior Court of Tuolumme County, 83 Cal. App. 4th 523, 538-39 (2000); MidCentury Insurance Co. v. Gardner, 9 Cal. App. 4th 1205, 1213, n.3 (1992); Associated Vendors, Inc., v. Oakland Meat Co., 210 Cal. App. 2d 825, 838 (1962).

As to the second requirement for finding alter ego, the Ninth Circuit has stated that "under California law the kind of equitable result that makes alter ego liability appropriate is an abuse of the corporate form, such as under-capitalization or misrepresentation of the corporate form to creditors." Firstmark, 859 F.2d at 94 (citing Orloff v. Allman, 819 F.2d 904, 909 (9th Cir. 1987)). "[I]t is not sufficient to merely show that a creditor will remain unsatisfied if the corporate veil is not pierced, and thus set up such an unhappy circumstance as proof of an 'inequitable result.'" Associated Vendors, 210 Cal. App. 2d at 842. "The purpose of the doctrine is not to protect every

unsatisfied creditor, but rather to afford him protection, where some conduct amounting to bad faith makes it inequitable, under the applicable rule above cited, for the equitable owner of a corporation to hide behind its corporate veil." Id.

Rasmussen argues that the TAC fails to allege what it is that he did that would justify piercing the corporate veil as to him. Wagon Wheel's allegations are sufficient to plead an alter ego relationship as to Rasmussen because the TAC identifies his alleged unity of interest with Ballantine and his wrongful conduct, including the following: (1) Rasmussen was a principal investor, manager, and president of Ballantine, owned stock in Ballantine[3], and was a "responsible managing officer" of Ballantine and its Commission Merchant License (see TAC ¶¶ 10, 12); (2) Rasmussen knew that Ballantine was inadequately capitalized and was financially unable to do business as a licensed Commission Merchant and induced Wagon Wheel to deliver fruit (see TAC ¶13 ); (3) Rasmussen knew that Ballantine was not treating Wagon Wheel's sales proceeds separately from Ballantine's funds (see TAC ¶ 13); (4) Rasmussen knew that Ballantine did not own title to Wagon Wheel's fruit proceeds and Rasmussen, as president, wrote checks to benefit himself and other defendants from these proceeds (see TAC ¶¶ 13, 14); (5) Rasmussen intentionally commingled Wagon Wheel's $1,300,000.00 of grower funds with Ballantine's funds (see TAC ¶ 12); (6) Rasmussen and the individual defendants personally guaranteed millions of dollars of equipment purchases and leases to be used by Ballantine due to Ballantine's financial problems. (see TAC ¶12); and (7) Rasmussen used Wagon Wheel's grower funds to pay himself and to pay his personally guaranteed debt to Bank and other lenders (see TAC ¶ 12). The Court finds that the allegations listed above give Rasmussen adequate notice of the alleged wrongful conduct that is attributed to him.

---

[3]Rasmussen also argues that Wagon Wheel's allegations regarding his ownership in Ballantine are insufficient because they do not account for any percentage of his ownership. This argument has no merit as Rasmussen does not cite to any valid authority for this proposition. Rasmussen also argues that he was not an owner of Ballantine. At the motion to dismiss stage, Rasmussen's argument is irrelevant as Wagon Wheel's allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Marceau, 540 F.3d at 919.

Rasmussen also argues that the undercapitalization factor must be established as of the time the entity was formed. However, the authority cited by Rasmussen does not establish this requirement.[4] The California Court of Appeal has stated that: "The obligation to provide adequate capital begins with incorporation and is a continuing obligation thereafter during the corporation's operations." Hill v. State Farm Mut. Auto. Ins. Co., 166 Cal. App. 4th 1438, 693 (2008). In any event, inadequate capitalization is, at best, merely one factor to be considered by courts in deciding whether or not to pierce the corporate veil. In the instant matter, Wagon Wheel has alleged several factors in addition to inadequate capitalization.

Accordingly, Rasmussen's motion to dismiss Wagon Wheel's First Claim for Relief based on an alter ego theory of liability is denied.

II.   Third Claim for Relief- Violation of PACA Failure to Account and Pay Promptly and Fifth Claim for Relief-Breach of Fiduciary Duty[5]

Rasmussen's Argument

Rasmussen argues that Wagon Wheel's Third and Fifth Claims for Relief are deficient because they lump all of the individual defendants together with Ballantine.

Wagon Wheel's Argument

Wagon Wheel argues that Rasmussen's motion to dismiss does not attack each of Wagon Wheel's claims for relief individually but rather makes broad based attacks as to the TAC in general.

Resolution

With respect to the Third Claim for Relief Wagon Wheel alleges that Ballantine, David A., Eric A., Graham, and Rasmussen failed to accurately account for the amounts due for the produce sold and failed to make payments of the proceeds of those transactions. With respect to the Fifth

---

[4] Rasmussen cites to Pearl v. Shore, 17 Cal. App.3d 608, 617 (1971) and Associated Vendors, Inc. v. Oakland Meat Co., 210 Cal. App. 2d 825, 842 (1962).

[5] In reply, Rasmussen argues that TAC fails to allege what facts set up any duty for Rasmussen. See Rasmussen's Reply at 5. Given that the issue was not properly briefed pursuant to Local Rule 230, the Court expresses no opinion on this matter.

Claim for Relief, Wagon Wheel alleges that Ballantine, David A., Eric A., Graham, and Rasmussen, breached their fiduciary duties to Wagon Wheel for various reasons. Rasmussen's argument is not persuasive as he does not provide any authority for the proposition that Wagon Wheel may not allege that both Rasmussen as an individual defendant and Ballantine as the corporate defendant failed to account and pay promptly for the produce sold and breached their fiduciary duties.

Accordingly, Rasmussen's motion to dismiss Wagon Wheel's Third and Fifth Claims for Relief is denied.

III.   Sixth Claim for Relief-Conversion of Sale Proceeds

Rasmussen's Argument

Rasmussen argues that Wagon Wheel's conversion claim fails because there are no allegations that Rasmussen got any of the funds that were supposed to be paid to Wagon Wheel.

Wagon Wheel's Argument

Wagon Wheel argues that there is no requirement that Rasmussen personally receive funds converted by Ballantine for liability to attach. Wagon Wheel argues that it retained title and right of possession of the fruit proceeds and that Rasmussen and the individual defendants used the proceeds to pay Ballantine's creditors.

Resolution

In a conversion action, a plaintiff has to allege the following: (1) that it had ownership or a right to possession of the property at the time of the conversion; (2) the defendant's conversion by wrongful act or disposition of property rights; and (3) damages. Oakdale Village Group v. Fong, 43 Cal. App. 4th 539, 543-44 (1996). Rasmussen's argument fails as the elements of a conversion action do not require that Wagon Wheel allege that Rasmussen personally received converted funds.[6] Here, Wagon Wheel has alleged that it retained title and the right of possession to the fruit

---

[6] Even though this is not a required element in a conversion claim, Wagon Wheel nonetheless alleges in the TAC that the defendants converted the fruit proceeds for "Defendant's own individual use." See TAC ¶¶ 51-53.

10

proceeds that were derived from the sale of its fruit, and that Rasmussen and other individual defendants wrongfully converted the fruit proceeds and that as a result of the conversion, Wagon Wheel suffered damages in the sum of approximately $1,018,306.22.

Accordingly, Rasmussen's motion to dismiss Wagon Wheel's Sixth Claim for Relief is denied.

### IV.    Seventh Claim for Relief- Constructive Fraud

#### Rasmussen's Argument

Rasmussen argues that Wagon Wheel's fraud allegations are deficient because they are not plead with specificity pursuant to Fed. R. Civ. P. 9(b).  Rasmussen contends that the TAC fails to include allegations regarding the time, place, content of any misrepresentations, and an explanation of why the statement was misleading.  Rasmussen argues that the allegations are also insufficient because they lump all of the defendants together.

#### Wagon Wheel's Argument

Wagon Wheel argues that it is not alleging a claim of actual fraud but rather is asserting a constructive fraud claim.  Wagon Wheel asserts that constructive fraud comprises of any act, omission, or concealment involving a breach of a legal or equitable duty, trust or confidence which results in damage to another even though the conduct is not otherwise fraudulent.  Wagon Wheel contends that it alleged the necessary elements.

#### Resolution[7]

Wagon Wheel's constructive fraud claim, which is grounded in fraud, is subject to Rule 9(b)'s heightened requirements.  See Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC, 634 F. Supp. 2d 1009, 1021 (N.D. Cal. 2007); Guerrero v. Greenpoint Mortg. Funding, Inc., 2010 WL 4117102, *1 (9th Cir. Oct. 20, 2010) (holding that Rule 9(b) applies to constructive fraud claims).

---

[7] The Court notes that Rasmussen does not raise any specific arguments in his motion to dismiss with respect to Wagon Wheel's Eighth Claim for Relief-Constructive Trust and Accounting.  To the extent that Rasmussen is moving to dismiss the Eighth Claim for Relief, the motion is denied as he provides no arguments in support.

11

The California Court of Appeal has described constructive fraud as follows:

> In its generic sense, constructive fraud comprises all acts, omissions and concealments involving a breach of legal or equitable duty, trust, or confidence, and resulting in damage to another. Constructive fraud exists in cases in which conduct, although not actually fraudulent, ought to be so treated,-that is, in which such conduct is a constructive or quasi fraud, having all the actual consequences and all the legal effects of actual fraud.

Efron v. Kalmanovitz, 226 Cal. App. 2d 546, 559-60 (1964). Because constructive fraud consists of conduct that should be treated like fraud, this Court agrees with Rasmussen that Rule 9(b)'s pleading requirements apply.

Wagon Wheel does not satisfy Rule 9(b)'s requirements. Allegations of fraud should specifically include "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007). Wagon Wheel does not include the above listed information required by Swartz. Also, Rule 9(b) "does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." Swartz, 476 F.3d at 764-65. Here, Wagon Wheel lumps Ballantine, David A., Eric A., Graham, and Rasmussen together and fails to distinguish the defendants' particular roles in the alleged misrepresentations.

Accordingly, Rasmussen's motion to dismiss Wagon Wheel's Seventh Claim for Relief is granted with prejudice.[8]

## ORDER

For the reasons discussed above, IT IS HEREBY ORDERED that:

(1) Rasmussen's motion to dismiss Wagon Wheel's First Claim for Relief based on an alter ego theory of liability against him is DENIED;

---

[8] The Court dismisses Wagon Wheel's Seventh Claim for Relief with prejudice in light of the fact that Wagon Wheel was already given an opportunity to amend and cure the above noted deficiencies with respect to its Constructive Fraud claim for relief and has failed to do so. See Doc. No. 202 at 9-10.

(2)   Rasmussen's motion to dismiss Wagon Wheel's Third and Fifth Claim for relief are DENIED;

(3) Rasmussen's motion to dismiss Wagon Wheel's Sixth Claim for Relief is DENIED;

(4) Rasmussen's motion to dismiss Wagon Wheel's Seventh Claim for Relief is GRANTED with prejudice; and

(5) Rasmussen's motion to dismiss Wagon Wheel's Eighth Claim for Relief is DENIED.

IT IS SO ORDERED.

Dated:   March 25, 2011

CHIEF UNITED STATES DISTRICT JUDGE