1
2
3
4
5
6
7
8

**IN THE UNITED STATES DISTRICT COURT**

9

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11 | KINGSBURG APPLE PACKERS, INC., et al.,   )   Case No.: 1:09-cv-00901 AWI JLT
12               Plaintiffs,        )   ORDER GRANTING BANK OF THE WEST'S

)

)   ORDER GRANTING BANK OF THE WEST'S
)   MOTION TO COMPEL ARBITRATION
13      v.                           )
)   (Doc. 262)
14 | BALLANTINE PRODUCE CO., INC, et al.,    )
)
15             Defendants.      )
)
16 _____ )
)
17 | AND RELATED CROSS-CLAIMS        )
_____ )

18         Third Party Defendant Bank of the West ("the Bank") seeks to compel arbitration and stay

19 the pending action. (Doc. 262). On February 16, 2012, Ballantine Produce Co., Inc. ("Ballantine)

20 filed its opposition (Docs. 270-72), to which the Bank replied on February 24, 2012 (Doc. 278).

21         On March 5, 2012, the Court heard argument regarding the motions. For the following

22 reasons, the Bank's motion to compel arbitration is **GRANTED**.

23 **I.**       **BACKGROUND**

24         On August 12, 2009, Ballantine, Virgil Rasmussen, David Albertson, Eric Albertson, Jerry

25 DiBuduo, and Babijuice Corporation of California filed a "Third Party Complaint" against Pelton

26 and the Bank. (Doc. 97). In the Third Party Complaint, the parties raised claims for equitable

27 indemnity, contribution, and tort of another. *Id.* The Bank filed its Answer on September 11, 2009.

28 (Doc. 107), and Pelton filed an Answer on February 19, 2010 (Doc. 152).

1

1    The Bank contends, "[t]he sole remaining issues in this case are the Third Party Plaintiffs'

2    rights to indemnity, contribution or tort of another damages against THIRD PARTY

3    DEFENDANTS BANK OF THE WEST . . . and JOHN D. PELTON and JOHN D. PELTON &

4    ASSOCIATES, INC. . . . and Pelton's right to contractual indemnity against Third Party Plaintiff

5    BALLANTINE PRODUCE CO., INC." (Doc. 262-1 at 1)

6    On October 16, 2010, after completing mediation sessions, Ballantine and Albertson settled

7    a related case in Fresno County Superior Court against the Bank and Pelton. (Doc. 262-1 at 2) and,

8    in doing so, agreed to release the Bank and Pelton from all pending claims.  *Id.*  The settlement

9    agreement contained a release provision, pursuant to Cal. Civil Code § 1542 purporting to release

10   all claims "arising out of or related to the Action."  (Doc. 262-2 at 6) Likewise, the agreement

11   indicated that any disputes relating to its interpretation or enforcement would be resolved through

12   binding arbitration.  *Id.* at 8.

13   The Bank contends that because the Third Party Complaint had been filed a year before the

14   settlement was reached, the settlement agreement resolved these claims as well.  (Doc. 262-1 at 2)

15   Ballantine and Albertson contend that this was not their intention.  *Id.* Given this dispute, the Bank

16   asserts that it must be resolved via arbitration according to the terms of the settlement agreement.

17   *Id.*  The Bank seeks an order remanding this matter for arbitration and a stay to allow the arbitration

18   to be completed. *Id.*  Pelton joins in these requests.  (Doc. 264)

19   Ballantine argues that it never intended the state court settlement to encompass the federal

20   court claims.  (Doc. 271 at 4) Thus, it objects to the claims made in the federal action being referred

21   to arbitration based upon the state court settlement.[1] *Id.*

22   **II.     LEGAL STANDARDS**

23   It is well-established that "arbitration provides a forum for resolving disputes more

24   expeditiously and with greater flexibility than litigation."  *Lifescan, Inc. v. Premier Diabetic*

25   *Servs., Inc.*, 363 F.3d 1010, 1011 (9th Cir. 2004) (citation omitted).  The Federal Arbitration

26

27          [1]Ultimately, this argument misses the mark.  The question before the Court is not whether the merits of the claims
     raised in this federal court action should be arbitrated but whether the parties *settled* these claims along with the state court
28   action.

2

1  Act ("FAA") provides that written arbitration agreements "shall be valid, irrevocable, and

2  enforceable, save upon such grounds as exist at law or in equity for the revocation of any

3  contract."  9 U.S.C. § 2. "[A]ny doubts concerning the scope of arbitrable issues should be

4  resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,

5  460 U.S. 1, 24-25, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983).  As a result, "there is a

6  presumption of arbitrability" and arbitration should only be denied when "it may be said

7  with positive assurance that the arbitration clause is not susceptible of an interpretation that

8  covers the asserted dispute."  *AT&T Tech., Inc. v. Communs. Workers of Am.*, 475 U.S. 643,

9  650, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986) (citation omitted).

10      To determine whether an arbitration agreement encompasses particular claims, the

11  Court looks to the plain language of the agreement, and "[i]n the absence of any express

12  provision excluding a particular grievance from arbitration . . . only the most forceful

13  evidence of a purpose to exclude the claim from arbitration can prevail."  *United*

14  *Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584-86, 80 S. Ct.

15  1347, 4 L. Ed. 2d 1409 (1960).  Because the FAA "is phased in mandatory terms," "the

16  standard for demonstrating arbitrability is not a high one [and] a district court has little

17  discretion to deny an arbitration motion."  *Republic of Nicaragua v. Standard Fruit Co.*, 937

18  F.2d 469, 475 (9th Cir. 1991).

19  **III.     DISCUSSION AND ANALYSIS**

20      The Court's role in applying the FAA is "limited to determining whether a valid

21  agreement to arbitrate exists and, if so, whether the agreement encompasses the dispute as

22  issue."  *Lifescan*, 363 F.3d at 1012.  Here, the Settlement and Release Agreement ("the

23  Agreement") signed by Ballantine, the Bank, and other parties on October 16, 2010,

24  provides in relevant part:

25      <u>Enforcement by Binding Arbitration</u>.  Any disputes relating to the enforcement
        or interpretation of any provision of this Agreement shall be submitted for
26      determination to Retired Judge Nick Dibiasco by binding arbitration.

27  (Agreement ¶ 19, Doc. 262-2 at 8).  The Bank argues the Agreement "released [the] Bank

28  from all of the claims that were pending at that time."  (Doc. 262-1 at 2).  On the other hand,

3

1    Ballantine asserts the Agreement applies to only state claims and "there is no agreement to

2    arbitrate [the] pending third party claims in this Federal Action and therefore the motion to

3    compel arbitration should be denied."  (Doc. 271 at 2).

4              **A.      The parties entered into a valid arbitration agreement.**

5              When determining whether a valid and enforceable agreement to arbitrate has been

6    established for the purposes of the FAA, the court should apply "ordinary state-law

7    principles that govern the formation of contracts to decide whether the parties agreed to

8    arbitrate a certain matter."  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944

9    (1995); *Circuit City Stores v. Adams*, 279 F.3d 889, 892 (2002).  The Agreement contained a

10   choice-of-law provision, under which the parties agreed to apply "the laws of the State of

11   California."  (Agreement ¶ 17, Doc. 262-2 at 8).

12             Pursuant to California contract law, the elements for a viable contract are "(1) parties

13   capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or

14   consideration."  *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999)

15   (citing Cal. Civ. Code § 1550; *Marshall & Co. v. Weisel*, 242 Cal. App. 2d 191, 196 (1966)).  The

16   Supreme Court explained, an agreement to arbitrate may be "invalidated by 'generally

17   applicable contract defenses, such as fraud, duress, or unconscionability,' but not by

18   defenses that apply only to arbitration or that derive their meaning from the fact that an

19   agreement to arbitrate is at issue."  *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740,

20   1746 (2011).  Under California law, an arbitration agreement may only be invalidated for the same

21   reasons as other contracts.  Cal. Code Civ. Proc. § 1281.

22             In this case, there is no question that the parties were capable of contracting and consented

23   to arbitration of disputes relating to the enforcement or interpretation of the Agreement.  Further,

24   there cannot be a dispute as to whether the agreement to arbitrate was supported by sufficient

25   consideration.  *See Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002) (a promise

26   to be bound by the arbitration process itself serves as adequate consideration).  The "paramount

27   consideration" is "the parties' objective intention at the time of contracting."  *Porreco v. Red Top

28   RV Center*, 216 Cal. App. 3d 113, 119 (1989).  Here, it is clear the parties intent was to arbitrate

4

1   "relating to the enforcement or interpretation of" the Agreement– although the parties dispute

2   whether the Agreement applied to the state claims only, or to the state *and* federal claims.

3          Ballantine has not presented evidence of fraud, duress, or unconscionability to invalidate the

4   Agreement.  Because the elements for a viable contract are satisfied and Ballantine has not

5   demonstrated the Agreement should be invalidated based upon contractual defenses, the arbitration

6   agreement between the parties is valid.

7          **B.      The arbitration agreement encompasses the dispute at issue.**

8          To determine whether an arbitration agreement encompasses particular claims, the Court

9   looks to the plain language of the agreement, and "[i]n the absence of any express provision

10  excluding a particular grievance from arbitration . . . only the most forceful evidence of a purpose to

11  exclude the claim from arbitration can prevail."  *United Steelworkers*, 363 U.S. at 584-86.

12  Likewise, "Parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as

13  whether the parties have agreed to arbitrate or whether their agreement covers a particular

14  controversy.  *Rent-A-Center, W., Inc. v. Jackson*, 130 S. Ct. 2772, 2779-80 (2010).

15         Ballantine presents the declaration of Bruce Brown, who was the attorney who

16  represented Ballantine in the state court action.  (Doc. 272) Mr. Brown attests that, though

17  he was aware of the federal court action, "Up to the time of the Settlement Agreement in the

18  State Action on October 16,2010 there were no statements that the Settlement and Release

19  Agreement could cover any claims other than the claims that were contained in the State

20  Action." *Id.*

21         The Court is not certain of Mr. Brown's meaning–either he is stating that there *never*

22  were discussions about the federal court action during the mediation or he is stating that the

23  discussions of this action *did not begin* until the settlement agreement was being drafted. In

24  any event, despite Ballantine urging this Court to determine that the settlement agreement

25  did not include settlement of this federal court action, this Court is not vested with the

26  authority to do so.  Instead, the parties determined that this authority would be vested in an

27  arbitrator during a binding arbitration.  (Doc. 272 at 7) The settlement agreement reads,

28  "Any disputes relating to the enforcement **or interpretation of any provision of this**

**Agreement** shall be submitted for determination to Retired Justice Nick Dibiaso by binding arbitration." *Id.*, emphasis added.  Thus, based upon this broad specification by the parties of the matters that would be arbitrated, it appears only the arbitrator can determine the confines of that agreement and that doing so was the exact intention of the signatories to that agreement.  Therefore, the Court finds that the dispute at issue– whether the settlement agreement includes the federal claims–is encompassed within the arbitration agreement.

## IV.    ORDER

The Bank and Ballantine entered into a valid arbitration agreement, which encompasses the issue in dispute.  As a result, "there is a presumption of arbitrability" and motion to compel arbitration should not be denied.  *See AT&T Tech., Inc.*, 475 U.S. at 650.

Accordingly, **IT IS ORDERED**:

1.    Bank of the West's motion to compel arbitration (Doc. 162) is **GRANTED**;

2.    The matter is **STAYED** to allow the completion of the arbitration;

3.    During the stay, counsel **SHALL** file a joint status report every 60 days until the arbitration is completed and **SHALL** file a joint status report within 10 days of the completion of the arbitration.

IT IS SO ORDERED.

Dated:   **March 5, 2012**                                              **/s/ Jennifer L. Thurston**
                                                                            UNITED STATES MAGISTRATE JUDGE

6